CITY AFFAIRS COMMITTEE OF JERSEY CITY, A BODY CORPORATE, PROSECUTOR, v. DIVISION OF LOCAL GOVERNMENT OF THE STATE DEPARTMENT OF TAXATION AND FINANCE, THE BOARD OF COMMISSIONERS OF THE CITY OF JERSEY CITY, AND THE CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, DEFENDANTS.

Argued April 1, 1946—Decided April 8, 1946.

Before Justices Donges, Heher and Colie.

For the prosecutor, *Leo Rosenblum*.

For the defendant City of Jersey City, *Charles A. Rooney* (*Charles Hershenstein* and *John F. Lynch, Jr.*, of counsel).

The opinion of the court was delivered by

Heher, J. On February 5th, 1946, the current annual budget of the City of Jersey City received the preliminary approval of the governing body. On that very day, but prior to the approving action, the city came into possession of $4,404,946.32, representing interest on delinquent second class railroad taxes for the years 1932 to 1940, inclusive, and also interest on an additional assessment levied for the year 1939; and the point at issue is whether the budget-making authority was under a statutory duty to include this item in the budget as anticipated revenue. There was no such inclusion; and the Director of Local Government and the Division of Local Government determined that there were no grounds for interference with the local authority.

On December 31st, 1945, the city's "surplus revenue," as defined in *R. S.* 40:2–16, amounted to $5,870,585.04. Of this sum, $4,390,000 was appropriated in the budget as an "anticipated revenue" under section 40:2–15, leaving a balance of $1,480,585.04, an amount deemed insufficient as an operating fund to meet the city's maturing obligations during the fiscal year. Under section 40:2–17, as amended by chapter 317 of the Laws of 1942 (*Pamph. L.*, p. 1155), there was included in the anticipated "miscellaneous revenues" the sum of $4,500,000 as the reasonably expected cash return from second

class railroad taxes and railroad franchise taxes during the year. But this revenue, experience had shown, would not come to hand until December 10th, 1946; and the delinquent tax interest under consideration was treated as part of the "surplus revenue," making the total of that fund $5,885,531.36, practically the same as the surplus on hand at the close of the fiscal year 1945. The proofs reasonably tend to show that this sum was not more than sufficient to meet current needs and to provide for unforeseen contingencies during the year 1946. There is no showing that such did not constitute prudent and orthodox fiscal planning.

The question is one of statutory construction. Prosecutor maintains that the delinquent tax interest thus paid takes the category of "miscellaneous revenue" within the purview of section 40:2–17, *supra,* and that its inclusion in the budget as an anticipated revenue of this class is mandatory under the statute. This is a misconception of the legislative intent and purpose.

Section 40:2–17, *supra,* classifies as "miscellaneous revenues" such amounts "as may reasonably be expected to be realized in cash during the budget year" (a) "from known and regular sources, or" (b) "from sources reasonably capable of anticipation, and lawfully applicable to the appropriations made in the budget, other than dedicated revenues, revenues from taxes to be levied to support the budget, receipts from delinquent taxes, and surplus revenue." Prosecutor concedes that the revenue under consideration is not in category (a). The moneys plainly did not come from a "regular source." The insistence is that the item falls into category (b). But that classification is confined to revenues from sources "reasonably capable of anticipation," and it therefore does not embrace the income under consideration. "Anticipation," within the intendment of this provision, connotes reasonable expectation and foresight. The true sense and significance of the term is elucidated by the subsequent provisions that such miscellaneous revenues *shall* include such amounts as may "reasonably be expected to be realized in cash during the budget year from the tax on Class II railroad property and from the municipality's share of the railroad franchise taxes;"

and that a municipality *may* anticipate as a miscellaneous revenue the total amount of all payments due and payable to the municipality during the budget year directly or indirectly as a result of the sale of property by the municipality, when the obligation to make such payment is entered into before the fortieth day of the budget year, "but no miscellaneous revenues from *any other source* shall be included as an anticipated revenue in the budget in an amount in excess of the amount actually realized in cash from the same source during the next preceding fiscal year, unless the Commissioner of Local Government shall determine upon application by the governing body that the facts clearly warrant the expectation that such *excess amount* will *actually* be realized in cash during the budget year and shall certify such determination in writing" to the municipality. This is a peremptory direction against the inclusion of revenues from sources other than those specified without the approval of the Commissioner of Local Government, upon application by the governing body. The provision manifestly has reference only to revenue in anticipation. Here, no money was realized in cash from the same source during the prior fiscal year.

The statutory design, in this regard, is to confine the estimates of anticipated revenues within reasonable bounds and to avoid the excesses of blind optimism; and the jurisdiction of the Commissioner of Local Government in this behalf is invocable only by the local governing body. The specific provision for the inclusion in the anticipated revenues of the annually recurring railroad property and franchise taxes, anticipated in the budget here, signifies a purpose to exclude income of the particular non-recurring class from the category of anticipated revenues, without the approval of the Commissioner of Local Government at the instance of the governing body. The same policy is embodied in *R. S.* 40:2-28.1 (*Pamph. L.* 1939, *p.* 19), which provides that "items of anticipated revenue" may be shown in a budget as "additional amounts to be received from such anticipated revenues" or as amounts to be received from "other than regular sources," if the Commissioner of Local Government shall determine, upon application by the governing body, that

there is a sound basis for the expectation that such items will actually be realized in cash during the budget year, and shall make certification accordingly to the municipality.

Thus it is that this particular item falls into the category of surplus revenue within the intendment of section 40:2–16(c), as amended by chapter 203 of the Laws of 1942 (*Pamph. L., p.* 576). It constitutes revenue "coming into the general treasury * * * from any and all sources, applicable to the lawful expenditures for the fiscal year" of the municipality, "which are not included in any of the several items of anticipated revenues as stated in the budget of such year." In summary, under sections 40:2–17 and 40:2–28.1, moneys from "sources reasonably capable of anticipation" in excess of the amount received in cash from the same source during the preceding fiscal year, or from "other than regular sources," may be included in the budget as an anticipated revenue only with the approval of the Commissioner. And the initiative rests exclusively with the local governing body. By the specific direction of section 40:2–16(c), unanticipated income applicable to general expenditures is classified as surplus revenue. And how much of the reserve fund shall be appropriated in the budget for the current year rests in the sound discretion of the governing body, subject to the condition imposed by section 40:2–16, as amended. *In re City Affairs Committee of Jersey City,* 129 *N. J. L.* 589.

Such we conceive to be a consistent and harmonious exposition of the statute as a whole, viewed as an integrated scheme of fiscal management. The act must have a reasonable construction in keeping with the common understanding of the terms, unless terms of art are employed, which are to receive their technical sense. The end of interpretation is the discovery of the true intention of the law; and whenever that intention can be indubitably ascertained, the courts are bound to give it effect. The apparent intention of the lawgiver is to be collected either from the particular provision or the general context and the frame and design of the whole; and the real intention, when gathered with certainty, prevails over the literal sense of terms. The reason of the law, *i. e.,* the motive which led to the making of it, is one of the most

certain means of establishing the true sense. But a *casus omissus* can in no case be supplied by a court of law, for that would constitute the exercise of the law-making power. Statutes should be interpreted according to the most natural and obvious import of the language, without resorting to subtle or forced construction for the purpose either of limiting or extending their operation. Courts cannot correct supposed errors or omissions of the legislature. *Dwarris on Statutes* 688, *et seq.*

The writ of *certiorari* is accordingly dismissed, with costs.