24 N.J. Super. 105 (1952)
93 A.2d 589
ANDREW J. MARKEY, PLAINTIFF-RESPONDENT,
v.
CITY OF BAYONNE, A MUNICIPAL CORPORATION OF NEW JERSEY, EDWARD F. CLARK, JOHN F. LEE, DEFENDANTS-APPELLANTS, AND MILL REALTY CORPORATION, A CORPORATION OF NEW YORK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1952.
Decided December 24, 1952.
*108 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Alfred Brenner argued the cause for defendants-appellants.
Mr. Andrew J. Markey, plaintiff-respondent, argued pro se.
The opinion of the court was delivered by GOLDMANN, J.A.D.
This is an appeal from a judgment of the Superior Court, Law Division, setting aside as null and void a deed from the City of Bayonne to Mill Realty Corporation conveying certain municipal park lands, ordering the corporation to reconvey the lands to the city, and directing that upon such reconveyance the city repay the purchase price of $80,000, without interest.
*109 The city acted under the provisions of N.J.S.A. 40:61-22.2 and 22.3 in selling the lands. On November 6, 1951 the Board of Commissioners of the City of Bayonne adopted a resolution authorizing the sale of park lands located on the northwest side of Avenue A near 25th Street in that city. The resolution described the lands intended to be sold by metes and bounds. These lands fronted on Avenue A a distance of 572.91 feet and extended northwestwardly from the avenue to a line described as "the original high water line fronting on Newark Bay." The resolution concluded as follows:
"Excepting and reserving therefrom a strip of land 1 foot wide for the entire length of the said original high water line said strip of land having for its western boundary the said high water line. The City of Bayonne reserves the said foot of land for the purpose of preserving to the City of Bayonne any riparian rights, none of which are included in this sale.
Irrespective of the foregoing metes and bounds description there is included in the land to be sold only so much thereof as lies to the East of a paved road [Park Road] running the entire length of the property along its western boundary."
The "original high water line" mentioned in the description appears as a dotted line marked "Original Shore Line" on a map of the property prepared in November 1951 and introduced in evidence by plaintiff. This line begins at a point in 25th Street some 40 feet southeast of Park Road and then traces a curve of a hanging arc which finally crosses the line of Park Road, extended, and goes on to meet the northeastern boundary of the tract at a point some 30 feet north of the extended line of the road. The result is the formation on the map of a small triangle at the northwestern corner of the tract.
The November 6, 1951 resolution fixed a minimum sale price of $50,000. The property was to be sold subject to the restrictions that the purchaser would be required to erect multiple dwelling units for rental purposes for at least 250 families and provide on-site parking facilities for at *110 least 125 automobiles, the buildings not to occupy more than one-third of the land area.
Public notice of the sale was duly advertised, the notice containing the same description, minimum price, conditions and restrictions as the resolution. On November 20, 1951, the date fixed for the public sale, defendant Mill Realty Corporation was the successful bidder, its bid being $80,000.
On February 14, 1952 the board of commissioners adopted a resolution authorizing the execution of a deed to the lands described as "lying between Avenue A and the easterly line of Park Road and the extension thereof, to lands of the Board of Education and between lands of the Board of Education and West 25th Street * * *." The municipality had been unable to clear up title to a small section in the southwestern corner of the tract, bounded by Park Road and 25th Street, and was awaiting a grant from the Department of Conservation and Economic Development. Accordingly, the resolution recited that Mill Realty Corporation being willing to accept title to this small plot at a later date, the city would execute a deed therefor upon receiving the grant in fee simple from the State.
The deed to the main tract was executed on behalf of the city by its mayor and city clerk on February 15, 1952, and delivered to defendant corporation. As described in the deed, the lands conveyed extended from the Avenue A frontage northwestwardly to Park Road, extended. Two parcels were excepted and reserved from the grant: (1) "a strip of land one foot wide lying adjacent to and east of the original high water line for the entire distance that the said high water line extends across the above described tract," and (2) the small plot in the southwest corner of the tract, already mentioned.
Meanwhile, on December 18, 1951 the board of commissioners had adopted a resolution authorizing an exchange of lands between the city and Mill Realty Corporation. The city was to convey the one-foot-wide strip along the original high water line fronting on Newark Bay mentioned in the *111 original resolution of sale and in the public notice. The corporation, in turn, was to convey a one-foot strip along the southeastern boundary of Park Road, extended, when and if title to the strip became vested in it. This resolution is mentioned merely to complete the account of the transaction between the city and the corporation. The effect or validity of the resolution need not be considered in view of the conclusion we reach as to the validity of the sale and conveyance of the main tract by the city.
Plaintiff, as a resident and taxpayer of the City of Bayonne, filed his complaint on March 11, 1952 to have the several resolutions that have been described, as well as the deed of February 15, 1952, set aside as null and void. He joined the City of Bayonne, its mayor and city clerk, and Mill Realty Corporation as defendants. They all answered, setting up separate defenses. Mill Realty Corporation cross-claimed against the municipality.
The pleadings and pretrial order narrow the issues to two. Plaintiff claims that (1) the lands described in the deed exceed in area those described in the public advertisement, and therefore the deed is void or should be reformed to conform to the advertisement; and (2) the portion of the dedicated park lands lying southeast of Park Road are lands reclaimed by bulkheading and filling, and therefore could not be sold in view of the prohibition of N.J.S.A. 40:61-22.2. Defendant city and its officers contend that the deed to the corporation is in conformity with the authorizing resolutions and the notice of sale, that none of the lands sold were reclaimed by bulkheading and filling, and that plaintiff is in laches. Defendant Mill Realty Corporation asserts the same defenses, and in addition thereto claims that the purpose and intent of the original notice of sale was to include all of the lands described in the deed under attack. By its cross-claim it asks the court, in the event the deed is set aside, to order repayment of the $80,000 by the city upon reconveyance of the lands in question.
*112 In awarding judgment to plaintiff the Law Division held: (1) the statute (N.J.S.A. 40:61-22.2) authorized only the sale of unreclaimed lands under water and used for park purposes; and (2) the area of the lands described in the deed exceeded that of the lands described in the public notice. The judgment, as already noted, set the deed aside as null and void, and ordered the city to repay the $80,000 paid by Mill Realty Corporation upon reconveyance of the lands. Defendants City of Bayonne, its mayor and city clerk appeal.
The judgment must be affirmed for the second reason assigned by the Law Division in entering judgment for plaintiff. We cannot, however, agree with its conclusion that the statute authorizes only the sale of unreclaimed lands under water and used for park purposes. N.J.S.A. 40:61-22.2 (L. 1938, c. 87, § 1, as amended L. 1938, c. 203, § 2) provides:
"Whenever a municipality has reclaimed lands under water, fronting or abutting park lands and such reclaimed lands have been bulkheaded and filled and are now used for park purposes, the municipality may sell any part or parts, parcel or parcels of park lands not so reclaimed whether contiguous or not contiguous to such reclaimed park lands; provided, that the total area of park land so sold shall not exceed in area the area of such reclaimed lands."
Initially, it should be observed that the city's right to sell the upland  that section of the tract lying between Avenue A and the original high water line fronting on Newark Bay  was not an issue in the case. It was not raised in the complaint, in any of the answers, or in the pretrial order. All parties were in agreement that such upland could be sold if the other requirements of the statute were met.
The inquiry in construing statutes is to determine the purpose and intent of the Legislature. Blackman v. Iles, 4 N.J. 82, 89 (1950). Legislation must be accorded a rational interpretation consistent with its manifest purpose. "The true meaning of any clause or provision of a statute ordinarily is that which best comports with the subject and general object of the statute." Central R.R. Co. of N.J. *113 v. Division of Tax Appeals, 8 N.J. 15, 28 (1951). In the absence of an explicit indication of a special meaning, the words of a statute are to be given their common usage. Ford Motor Co. v. N.J. Department of Labor and Industry, 5 N.J. 494, 503 (1950).
The Law Division judge reached the conclusion he did by reading the statute here involved together with the provisions of R.S. 40:60-27 (L. 1917, c. 152, Art. XVIII, § 9  the Home Rule Act  as amended) which prohibits a municipality from selling or disposing of any park lands or streets, "except in exchange for other lands contiguous to such park lands or streets, in area equal to or greater than the lands conveyed, and only for the purpose of straightening or rendering symmetrical the boundary or boundaries of said park lands or streets." The controlling thought in the mind of the judge seems to have been that the Legislature did not intend to permit a municipality to fill in lands under water, designate them as park lands, and then sell off other park lands that had been highly developed. We do not read that conclusion into N.J.S.A. 40:61-22.2.
The Home Rule Act (L. 1917, c. 152, Art. XVIII, § 9) originally forbade a municipality to sell any park lands or streets. The amendment of 1924 (L. 1924, c. 131, § 1) introduced the present language of R.S. 40:60-27 permitting the sale of such lands under the conditions stated. The Home Rule Act provision was last amended in 1933 (L. 1933, c. 41, § 1). The statute here involved, N.J.S.A. 40:61-22.2 was passed in 1938 and amended the same year. It is a later statute, dealing with the special situation where a municipality has reclaimed lands under water, fronting or abutting park lands. It must prevail in cases where municipalities have reclaimed lands by bulkheading and filling and then appropriated them to park purposes. Compare R.S. 40:184-27 (L. 1920, c. 81, § 1) authorizing the sale of park lands under certain circumstances, passed only three years after the adoption of the original Home Rule Act provision.
The language of N.J.S.A. 40:61-22.2 is plain and *114 unequivocal. The statute does not limit the kind of park lands that may be sold where equivalent areas have been reclaimed; they may be contiguous or non-contiguous, improved or not improved, so long as they themselves are not lands reclaimed by bulkheading and filling. As was said in City Affairs Committee of Jersey City v. Division of Local Government, etc., 134 N.J.L. 198, 203 (Sup. Ct. 1946):
"Statutes should be interpreted according to the most natural and obvious import of the language, without resorting to subtle or forced construction for the purpose either of limiting or extending their operation."
And see Weinacht v. Board of Freeholders of Bergen County, 3 N.J. Super. 172, 176 (App. Div. 1949), affirmed 3 N.J. 330 (1949).
N.J.S.A. 40:61-22.5 (L. 1938, c. 87, § 4) sheds light on the intention of the statute here in question. It requires that the proceeds of any property sold pursuant to N.J.S.A. 40:61-22.2 shall be used for retiring any bonds issued for the purchase or improvement of such property. The use of the word "improvement" implies that included in the permission to sell are such park lands as have theretofore been improved.
The City of Bayonne therefore had full authority to sell the upland portion of the tract between Avenue A and the original high water line fronting on Newark Bay, since it is conceded that lands reclaimed from the bay by bulkheading and filling and now used for park purposes far exceed in total area the area of such upland.
We turn, then, to the basic issue involved in this appeal, which is whether the area of the lands described in the deed exceeded that of the lands described in the public notice of sale.
A municipality is a creature of the Legislature. A municipal corporation is a government of enumerated powers, acting by a delegated authority. It "possesses only such *115 rights and powers as have been granted in express terms, or arise by necessary or fair implication, or are incident to the powers expressly conferred, or are essential to the declared objects and purposes of the municipality." Edwards v. Mayor, etc., of Moonachie, 3 N.J. 17, 22 (1949), reversing 3 N.J. Super. 10 (App. Div. 1949); Fred v. Mayor, etc., of Old Tappan, 10 N.J. 515, 518 (1952); Kirsch Holding Co. v. Borough of Manasquan, 24 N.J. Super. 91, 97 (App. Div. 1952). The Constitution of 1947 enjoins liberal construction in favor of municipalities of any law concerning them. Art. IV, Sec. VII, par. 11.
A municipality may not advertise that it intends to sell certain lands and then, by subsequent deed, convey to the highest bidder lands in excess of those specifically described. To permit a municipality to do so would be a fraud upon the statute and in derogation of the public interest.
The purpose of publicly advertising a contemplated sale of park lands under N.J.S.A. 40:61-22.3 is to give to the world clear and definite notice of the lands to be sold and the minimum price at which the municipality will sell. Those who read the public notice, and particularly the residents and taxpayers of the municipality, have a right to rely upon its terms. To allow the municipality to convey more land than was advertised for sale would be to give the successful bidder a greater advantage than those who might have become interested in the sale and bid thereat had they known that a larger tract would eventually be conveyed. Only two bids were received at the public sale. One can only surmise how many more bidders would have been attracted had they known that the city would convey park lands extending all the way to Park Road.
In this case the resolution authorizing the sale and the public notice stated, in clear and unambiguous terms, that the park lands sold extended from Avenue A northwestwardly to "the original high water line fronting on Newark Bay." The description was by metes and bounds; according to the *116 testimony the lands included totaled 5.608 acres. The original high water line had been mapped in 1873 and was indicated on the official maps of the city made in 1909, 1919 and 1930. It was a monument, accepted as such by the City of Bayonne, as well as by the State of New Jersey in all riparian grants, so that all lands west of the original high water line were formerly under the waters of Newark Bay and were known as riparian lands or rights.
Instead of conveying the lands as described in the resolution of November 6, 1951 and the public notice, the municipality conveyed lands extending all the way to the southeasterly line of Park Road, extended. The tract so conveyed contained 6.89 acres, or some 1.28 acres more than advertised.
The municipality claims that it intended all along to sell the land to the line of Park Road and that the corporate purchaser intended to buy it to that point, since the area between the original shore line and the southeasterly line of Park Road, extended, is valueless by itself, being elevated land. Assuming there was such an understanding between the parties to the deed, it cannot under the circumstances control. Both the seller and the buyer were bound by the explicit metes and bounds description contained in the authorizing resolution and the public notice of sale.
The argument of the municipality is that an ambiguity was introduced by reason of the inclusion in the resolution and advertisement of the following language:
"Irrespective of the foregoing metes and bounds description there is included in the land to be sold only so much thereof as lies to the East of a paved road [Park Road] running the entire length of the property along its western boundary."
We do not agree. The northeasterly and southwesterly courses of the description contained in the resolution and public notice run "to the original high water line fronting on Newark Bay." The course bounding the northwesterly side of the tract to be sold is described as "Southerly in a *117 general direction along the said original high water line fronting on Newark Bay above referred to, its several courses * * *." "Several courses" could only refer to the shore line, which has no single, undeviating course. The line of Park Avenue runs along one course, and that a straight one.
Defendant municipality ignores the language of the paragraph in the description preceding the one just quoted and which excepts and reserves from the tract "a strip of land 1 foot wide for the entire length of the said original high water line said strip of land having for its western boundary the said high water line. The City of Bayonne reserves the said foot of land for the purpose of preserving to the City of Bayonne any riparian rights, none of which are included in this sale." This exception was recognized in the description contained in the deed from the city to Mill Realty Corporation. Reading the language of this exception in conjunction with the metes and bounds description of the tract itself, it is impossible to distort the words of the latter so as to enlarge the area advertised to be sold to include the lands lying between the original shore line or high water line of Newark Bay and the southeasterly line of Park Road. This area was formerly lands under water or riparian rights, and the paragraph of exception specifically stated that none of the riparian rights was included in the sale.
The only purpose of the paragraph in the public notice stating that "there is included in the land to be sold only so much thereof as lies to the East of a paved road running the entire length of the property along its western boundary" was, as testified by a member of the Law Department of the City of Bayonne who prepared the notice of sale, "to exclude any part of the land that might have been west of the easterly line of Park Road." This obviously covered the small triangular plot located at the northwest corner of the tract, described in the earlier part of this opinion.
We cannot agree with the municipality that plaintiff was guilty of laches. The municipality argues that the *118 several resolutions adopted by the governing body gave plaintiff notice of the contemplated action of the city. Resolutions do not have the formal quality of ordinances. Ordinances require public advertisement and hearing before passage on third and final reading. After adoption the ordinance or its title, together with notice of the date of passage, must be published in a newspaper. R.S. 40:49-2. There is no proof that plaintiff knew of the adoption of the resolutions in question, or that he knew of the public notice. And if he did have such knowledge, he had every right to assume that the resolution finally passed on February 14, 1952 authorizing the execution and delivery of a deed, and that the deed itself, would be in conformity with the authorizing resolution and the notice of sale. It was reasonable for him to believe that the city would act lawfully in completing the sale.
Plaintiff taxpayer acted with due diligence when he learned that the city had conveyed an area in excess of that described in the notice of sale. The date of the legal injury complained of was February 15, 1952, the date of the deed. This proceeding in lieu of certiorari was instituted on March 11, 1952. In ascertaining whether relief should be refused because of laches, the lapse of time should generally be considered as running from the date when the alleged legal injury occurred. Albert v. Caldwell, 127 N.J.L. 202, 203 (E. & A. 1941), reversing 126 N.J.L. 125 (Sup. Ct. 1941).
Laches involves more than mere delay.
"* * * To deserve that category, the delay must be for a length of time which, unexplained and unexcused, is altogether unreasonable under the circumstances, and has been prejudicial to the party asserting it or renders it very doubtful that the truth can be ascertained and justice administered. * * *" Stroebel v. Jefferson Trucking & Rigging Co., 125 N.J.L. 484, 487 (E. & A. 1940), affirming 124 N.J.L. 210 (Sup. Ct. 1940).
Riverton Country v. Thomas, 141 N.J. Eq. 435 (Ch. 1948), affirmed 1 N.J. 508 (1948). There is no hard and fast rule *119 that can be laid down for guidance, under all circumstances, on the subject of laches. A proceeding in lieu of prerogative writ must be prosecuted with due diligence. What is due diligence must be determined on the facts of each particular case. Seaman v. Monmouth County, 15 N.J. Misc. 249, 251 (Sup. Ct. 1935). We hold that plaintiff was diligent.
The municipality further contends that the court erred in refusing to admit evidence tending to prove that a judgment for plaintiff would not serve the public interest. The fact is that the municipality, in conveying more land than had been advertised for sale, violated the statute. As a taxpayer, plaintiff had the right to test the validity of the municipal action by a proceeding in lieu of prerogative writ. The courts are mindful of the public interest in reviewing such action, but where the Legislature has clearly set out the procedure to be followed by the municipality, the court must enforce the legislative direction. Cf. Beronio v. Pension Commission of Hoboken, 130 N.J.L. 620 (E. & A. 1943).
The case of Evans v. Villani, 19 N.J. Super. 86 (App. Div. 1952), cited by the municipality, is distinguishable. There plaintiffs brought an action in lieu of mandamus to compel defendants to apportion certain municipal assessments. The Law Division entered judgment for defendants. The Appellate Division affirmed, holding that the trial court correctly declined in its discretion to lend the compulsory process of the court to plaintiffs to enable them to accomplish in their personal interests an object patently disadvantageous to the public interest. The court pointed out that the ancient writ of mandamus was designed to remedy a wrong and not promote one, and it would not issue where it would contribute aid to the effectuation of a palpable injustice.
In view of our decision it is not necessary to consider the question raised by plaintiff as to whether the lands between the original high water line of Newark Bay and Park Road were reclaimed lands within the meaning of the *120 statute. Nor do we pass on the question whether the municipality had power under the statutes to limit the use of the lands sold by it.
The judgment is affirmed.