34 N.J. Super. 67 (1954)
111 A.2d 435
SUMMER COTTAGERS' ASSOCIATION OF CAPE MAY, NEW JERSEY, A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., PLAINTIFFS,
v.
CITY OF CAPE MAY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 23, 1954.
*70 Mr. Josiah E. DuBois, Jr., attorney for the plaintiffs.
Mr. William Elmer Brown, Jr., attorney for defendants City of Cape May and its officials.
Mr. Samuel Backer (Messrs. Backer and Arkus, attorneys), for defendants Adolph M. Koch, Evelyn Koch, Lionel Friedberg, Nan Friedberg, Hessel Friedberg, Zipporah Friedberg, Harry A. Mann and Beatrice Mann.
Mr. Daniel Bell, Jr. (Messrs. Kirkman, Mulligan and Harris, attorneys), for defendant The Boardwalk National Bank of Atlantic City.
WOODS, J.S.C.
By this action plaintiffs seek judgment adjudging that the sale of lots 5 to 12 inclusive, Block 139, as designated on the tax map of the City of Cape May to Adolph M. Koch, Evelyn Koch, his wife, Lionel Friedberg and Nan Friedberg, his wife, Hessel Friedberg and Zipporah Friedberg, his wife, and Harry A. Mann and Beatrice Mann, his wife, as tenants in common, is null and void and that the title to said lands and premises vests and remains in the City of Cape May.
The court has gleaned from the pleadings, stipulations, depositions, affidavits, testimony and exhibits on file the following facts: That the defendants Koch, Friedberg and Mann were desirous of erecting and operating a beach front motel in the City of Cape May and for that purpose early in 1953, contacted a realtor in Cape May and at his suggestion made inquiry of the commissioners as to city owned lots which might be available. It appears that the property to be purchased by Koch and his associates "hinged on the fact of whether or not they could acquire other ground to go with it." Time, too, was an element. Therefore, it was early in April 1953, after negotiations for several other privately *71 owned tracts had fallen through, that Koch notified the commissioners that he and his associates were interested in purchasing the land described in the complaint provided that title could be obtained at an early date in order that construction might be completed before the summer resort season started. In the course of previous discussions Koch had exhibited to and filed with the commissioners certain plans for his proposed motel. Accordingly, the commissioners on April 17, 1953 adopted a resolution pursuant to R.S. 40:60-26(a), which we quote in full:
"BE IT RESOLVED by the Board of Commissioners of the City of Cape May, a municipal corporation of the State of New Jersey, that:
1. The following described lands and/or buildings are hereby determined to be not needed for public use, and are hereby authorized and directed to be sold in the manner and subject to the terms and conditions prescribed herein.
2. The Collector is hereby authorized and directed to advertise such sale in the Cape May Star and Wave for two consecutive insertions, to wit, on the 23rd day of April 1953 and the 30th day of April 1953, and thereafter to conduct such sale at the Municipal Building on [Monday] Friday, May 1, 1953, and to sell such property to the highest bidder, bidding at least the minimum price hereafter determined.
3. The properties to be sold, and the minimum prices fixed for each, are as follows:

LOT BLOCK LOCATION MINIMUM PRICE
5 to 12 139 Beach Ave. Between $800.00 for the
 Trenton & Pittsburgh Aves. eight lots

4. Unless otherwise provided herein, the successful bidder shall pay the full purchase price at the conclusion of the bidding, and the Municipality shall deliver a deed without general warranties, which deed is hereby authorized to be executed and delivered immediately after the purchase price is fully paid.
5. The special terms and conditions of such sale are as follows: Building to start within twenty-four (24) hours from date of sale, completion within Ninety (90) days.
6. The Building to contain at least twenty units such as efficiency apartment or hotel rooms construction to be of concrete block and stucco, each unit to contain a private bath. Ground to be landscaped and have circular drive. Floor of building to be thirty (30) inches above grade. Off Street Parking area to be furnished by buyer two story center portion. Building to conform in every detail to plans filed at City Hall."
*72 The notice of sale prepared for publication set forth the same provisions and used the same language as the resolution adopted on April 17. However, when the April 23, 1953 issue of the Cape May Star and Wave appeared in the newsstands, one was purchased by Dr. Koch about noon on that date and he discovered that the notice of the sale of the lots in which he was interested did not appear. The omission was called to the attention of the commissioners who immediately endeavored to rectify the omission and directed the publisher to print and issue a special edition which became available to the public between 4:30 and 5:00 in the afternoon of April 23. This second run was the same as the original edition except that on page 7, in the place and stead of an article titled: "Cape Woman is Kissed by Mamie," there appeared the "Notice of Public Sale of Lands." The evidence revealed that page 7 of the supplemental edition was an additional page 7 insert with the substitution just mentioned.
The affidavit of F. Mervyn Kent, editor of the Cape May Star and Wave, states that "on April 23, 1953 the first press run was 2,450 copies, of which 1,142 were mailed to subscribers, both inside and outside of Cape May City, 900 copies were delivered to newsdealers and 400 copies were retained for sales from the office, replenishing supplies, advertisers' copies, reserve supply and file copies." In the second press run "approximately 400 additional copies were printed. Of these additional copies few were mailed to regular subscribers, other than to advertisers, and the whole number would not exceed 100. No accurate figures are available for the mailing, or for additional newsstand sales, but again I would estimate not to exceed 100, probably substantially less. The remainder of 200 or more copies were retained for current sales at the office, future retail sales and checking and file copies. A large number of copies were sold, leaving in our possession approximately 25 copies."
At any rate, the circulation of the "second press run" in no substantial way covered the circulation of the paper *73 as the public was entitled to in the premises. The court tried to ascertain from the clerk the reason the advertisement didn't appear in the regular and usual way in the first instance and why it so happened that this notice was overlooked. The answer was to the purport that she didn't know, thought he (the printer) had it. She couldn't explain. She intimated, too, that the representative of the press was at the meeting and that usually, without request, he picked up the copy of the notice at the desk. At the most, we know the publisher ran off a makeshift edition.
Plaintiffs allege that the only legal publication of the notice of public sale appeared in the April 30, 1953 issue of the Cape May Star and Wave, the day prior to the date on which the sale was held and it is their contention that the majority of the subscribers, most of whom reside outside of the City of Cape May during the month of April, could not and did not receive the issue of April 30 until several days after the sale was held.
On May 1, 1953 the sale was held. Dr. Koch bid the minimum of $800, and there being no higher bidders the lots were struck off to him and a deed delivered to him and his associates, which was recorded in the clerk's office for Cape May County on May 4, 1953.
Actual construction of the motel was started on the afternoon of May 1, 1953, although there is some testimony that the land was surveyed and cleared and portable wooden frames for the concrete foundations were on the premises several days prior to that date. Construction was substantially completed about July 3, 1953 at a total cost of over $100,000.
The grantees made no subsequent conveyances of any interest they have. They did, however, on June 30, 1953, give to the Boardwalk National Bank of Atlantic City, New Jersey, a bond and mortgage to secure a loan in the sum of $40,000.
Among the defendants named in the complaint is Herbert J. Luchenbach, who filed mechanic's notice of intention on *74 June 25, 1953. However, counsel informs the court that this lien notice has been discharged and suit against this defendant has been voluntarily dismissed.
Plaintiffs contend that none of the fundamental requirements of the statute (R.S. 40:60-26(a)) were complied with, and in particular that the following two fundamental requirements were not fulfilled: (a) the public were not given proper notice of sale; (b) the conditions of sale combined with the circumstances surrounding it were such as to prevent a public sale of said lands to the highest bidder and that the actions and failures to act on the part of the commissioners were designed to permit only the defendants, the Kochs, Friedbergs and Manns, to bid on said lands and to prevent any other person from bidding.
The defendants contend that the notice was sufficient and the conditions of sale were valid. They plead laches, estoppel, waiver and acquiescence.
It is well to state at the outset that we are most confident that the actions of the city commissioners and the defendants-purchasers throughout this entire transaction were in the utmost good faith. The premises in question had been owned by the city for 20 years without any offer having been made to them for the purchase of the same, and the commissioners were most desirous of placing the same back on the tax rolls. This offer was the first it had received throughout the years. As for the defendants-purchasers, they had spent four months in the City of Cape May endeavoring to purchase a tract of land sufficient in area to permit the erection of a motel and while searching and negotiating had adopted plans and employed a contractor, all because time was of the essence to them from a personal financial standpoint. The court takes judicial notice of the summer vacation period in that locale. The last-minute rush was unfortunate, but there is absolutely no evidence of any dishonesty or collusion.
Therefore, the grounds raised by the plaintiffs for declaring the sale void are purely technical. The first point which must be determined is: Was there a compliance with the statute insofar as public advertisement goes?
*75 R.S. 40:60-26 provides:
"The governing body of any municipality may sell any lands or buildings or any right or interest therein not needed for public use. * * *
(a) By public sale to the highest bidder after public advertisement thereof in a newspaper circulating in a municipality in which the lands are situated by two insertions at least once a week during two consecutive weeks, the last publication to be not more than seven days prior to the sale. * * *"
Did the publication of the special edition containing the notice, inasmuch as it was not distributed in the same manner and to the same persons as the first edition from which the notice was omitted, a sufficient publication to comply with the statute? This question is one of novel impression in this State. There is little law on the subject to guide us. In the case of Markey v. City of Bayonne, 24 N.J. Super. 105, 115 (App. Div. 1952), the court in an opinion delivered by Judge Goldmann, in speaking of the notice required under a statute which uses exactly the same wording as R.S. 40:60-26(a) concluded:
"The purpose of publicly advertising a contemplated sale of park lands under N.J.S.A. 40:61-22.3 is to give to the world clear and definite notice of the lands to be sold and the minimum price at which the municipality will sell. Those who read the public notice, and particularly the residents and taxpayers of the municipality, have a right to rely upon its terms. * * *"
And in City of Newark v. Smith, 120 N.J.L. 56 (Sup. Ct. 1938), Justice Heher quoted from the case of Bellingham Bay, etc., R. Co. v. City of New Whatcom, 172 U.S. 314, 19 S.Ct. 205, 206, 43 L.Ed. 460 (1899):
"Where the statute provides for constructive notice by publication only, the publication `must be of such a character as to create a reasonable presumption that the owner, if present and taking ordinary care of his property, will receive the information of what is proposed, and when and where he may be heard.'"
Applying this statement to the facts of the case before us, we must determine whether or not the publication was of *76 such a character as to create a reasonable presumption that any person who might be interested in bidding on the lands described in the notice, would receive the facts as to time for settlement and payment of the consideration, minimum price, and any conditions or restrictions to be imposed as provided by the statute.
"A publication of an official notice, advertisement, etc., in a single or extra edition will constitute a sufficient publication providing the single or extra edition contains substantially the same general news as the other editions and is distributed generally among the subscribers of the newspaper. * * *" 39 Am. Jur. 10, sec. 16.
The extra edition of the Cape May Star and Wave consisted of approximately 400 copies. This was about one-sixth of the original press run. Of the extra edition about 100 copies were mailed to advertisers and none to the other subscribers, except upon request; thus, less than 11% of the subscribers received copies of the extra edition containing the notice of sale. Approximately 100 copies of the second edition were placed on the newsstands and the remaining 200 copies were sold directly from the office. The court feels that in this case there was a faulty publication for the reason that distribution was not made generally among the regular subscribers. However, we are aware of the fact that periodically the Legislature sees fit to adopt validating acts for the purpose of correcting defective publication in the case of a sale of public lands. In fact, one was adopted on May 1, 1953. Although none has been adopted since the date of the sale, we hold that it was not the intent of the Legislature in providing for publication of notice of sale in such cases to make failure of a strict compliance with the statute the basis for declaring such sale void, "provided, however, that such sales shall have been or shall be authorized or confirmed by resolution of the governing body of such municipality." Such was the case in this instance. In all other respects the procedure before and after the sale *77 was in accord with the statute. Although we consider the publication defective, we feel it is not in itself in this case a sufficient deviation from the prescribed procedure to render the sale void.
Also, the plaintiffs having had both knowledge and experience in these matters of advertising sale of public lands and of the lots in question, very soon after May 1, 1953, did nothing toward asserting their right with diligence but temporized and waited to institute these proceedings after the building was completed. Testimony that they wanted to be sure of legal grounds and merits for action taken consumed much time. Had positive action been taken by them soon after they learned of what had been done by way of advertising, by filing a complaint asserting the publication as alleged, this court would not have hesitated in allowing injunctive relief until the validity of the published notice according to law had been established.
Plaintiffs also contend that the heart of the case is that all bidders did not have the same opportunity to meet the conditions of sale. They claim that it would have been impossible for anyone else to have competed with Dr. Koch and his associates by virtue of the fact that the plans referred to in the resolution were Dr. Koch's plans; that a bidder other than Dr. Koch would have been required to start construction within 24 hours after the hour of sale, or within nine days after the first public advertisement; that he would have been called upon to complete the building within 90 days in accordance with Dr. Koch's plans. In short, they contend that the resolution and public advertisement was so worded as to prevent and prohibit competitive bidding. It is true that the conditions of sale as set forth in the resolution and notice were such as might have discouraged a bidder other than Koch and his associates (although there is no evidence that any other persons even considered bidding for the lands); they were such as gave Koch and his associates a competitive advantage; but they were not of such purpose as to prohibit *78 and prevent any other person from bidding. R.S. 40:60-26 specifically provides that:
"The governing body may also impose any restrictions on the use to be made of such land and any conditions of sale as to buildings or structures to be erected thereon, or as to the type, size, or other specifications of such buildings or structures * * *, and the time within which such conditions shall commence or be concluded, or any other conditions of sale in the manner and to the same extent as any other vendor of real estate, whether such sale shall be made at public or private sale; provided, however, that any conditions for the payment of the consideration upon credit and the restrictions on the use to be made of the land and the conditions of sale shall be set forth at length in any advertisement of sale hereinabove required."
The conditions set up under this statute as in the case of bids for public contracts, must set up a common standard for competition. Waszen v. Atlantic City, 1 N.J. 272 (1949), and must supply such information as will afford all bidders a fair and reasonable opportunity for competition and enable them to bid intelligently. Camden Plaza Parking, Inc., v. City of Camden, 16 N.J. 150 (1954). The conditions set up by the Commissioners of Cape May in this particular case complied with the requirements of the statute.
There were no bidders competing with Koch and his associates, likely or in fact. In all the testimony and evidence adduced not one of the plaintiffs, and no person outside or elsewhere seems to have had an interest as a bidder, or asserted such. According to the collector-clerk, however, we know that these lots were offered for sale as many other such lots in resort towns of Cape May County  at $100 each, subject to an offer of a higher bidder; that these same eight lots were held by the City of Cape May for 20 years with no offer or bids disclosed; that in all this time they returned no revenue to the municipality but that shortly after the sale to Koch and his associates, the lots in question were for tax purposes placed on the assessment roll at $2,500 each and that the sale enhanced the municipality's ratables by $20,000, an assessment figure last appearing on the tax duplicate a score of years prior thereto.
*79 Plaintiffs are charged with laches and defendants contend that thereby they are estopped from now complaining and maintaining this action. Defendants argue that plaintiffs have acquiesced in the doing of all the things of which they complain and, therefore, are not entitled to the relief prayed for.
It is undisputed that defendants-owners, through their contractor, started excavations and poring of concrete on the afternoon of the day of the sale, May 1, 1953, and that the work of erecting the motel was continuous until completion in July, 1953. The interrogatories and the testimony of some of the plaintiffs-members of the Summer Cottagers' Association reveals that some of them were aware as early as May 4, 1953 that the construction of the motel had commenced. Indeed, some saw activity on the lot the last week in April 1953. On May 4, also, James K. Davis, one of the plaintiffs, first questioned the legality of the publication. On May 8, 1953 the question of injunctive relief was discussed with an attorney. On May 28, 1953 said James K. Davis wrote to plaintiff, Basil M. Graham, a permanent resident of the City of Cape May, who had watched the construction of the motel from the very first, as follows: (EX. P-8)
"The question is: `Has the City of Cape May complied with the statutes of New Jersey in selling the land on which the Motel is being erected?' * * * It all looks very questionable! In our conversation Jim agreed he thought it proper that he, you and possibly also Jim Lukens should call informally on the Mayor and ask him to show, to your satisfaction, that the sale was according to the statutes."
They argue that it was not until July 11, 1953 that plaintiff Davis knew that the plans referred to in the resolution as being on file in the city hall were actually prepared for Koch and his associates.
"In ascertaining whether relief should be refused because of laches, the lapse of time should generally be considered as running from the date when the alleged legal injury occurred. Albert v. Caldwell, 127 N.J.L. 202, 203 (E. & A. 1941), reversing 126 *80 N.J.L. 125 (Sup. Ct. 1941)." Markey v. City of Bayonne, 24 N.J. Super. 105, 118 (App. Div. 1952).
In this case the alleged legal injury occurred on May 1, 1954 when the premises were struck off to defendants Koch and his associates and the deed to the lands delivered to them.
There is evidence that it was not until an electric sign, of which they disapproved, was erected on the motel in July 1953 that the plaintiffs made any definite investigation and active complaint either to the governing body or the owners of the land; and this despite the fact that some of them had questioned the legality of the publication just seven days after the sale and many of them had watched the daily progress of construction over a two-months period. The silence of the plaintiffs while they watched the construction and completion of the motel, a period during which the defendants daily changed their position by the expenditures of large sums of money, bars them from now attempting to have said sale declared void.
Said the court in Spangler v. Dan A. Sprosty Bag Co., 183 Md. 166, 36 A.2d 685, 690 (Md. Ct. App. 1944):
"`Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.'"
After considering all the facts, circumstances and the law applicable thereto, the court feels that the sale cannot be declared void since the defendants acted in good faith, have expended large sums of money, have incurred financial obligations and for the further reason that such sale was not obtained by fraud, collusion or deceit. In truth, counsel for plaintiffs concede as much and there is nothing in the record *81 to impute fraud to the defendants. The plaintiffs have not moved with the required "reasonable diligence to which they were impelled by known events and laches exists." Travis v. Borough of Highlands, 136 N.J.L. 199, 55 A.2d 109 (Sup. Ct. 1947).
Judgment for the defendants will be entered accordingly.