HENRY T. CLAUS, CAESAR A. GRASSELLI, R. RIGGS GRIFFITH, IV, and J. B. S. HOLMES, Plaintiffs,

*vs.*

JOHN E. BABIARZ, Mayor of the City of Wilmington, et al., Defendants.

Civ. A. No. 1553.

*New Castle, April 8, 1963.*

*Rodney M. Layton* and *Max S. Bell, Jr.,* of Richards, Layton & Finger, Wilmington, for plaintiffs.

*Joseph M. Kwiatkowski* and *James M. Mulligan, Jr.,* Wilmington, for The Mayor and Council of Wilmington and certain individual defendants. *Norman N. Aerenson* and *Sidney Balick,* Wilmington, for Metropolitan Associates, Inc.

SHORT, Vice Chancellor: This case is now before the court on plaintiffs' application for the taxing of certain items as costs and for the award of counsel fees and expenses. The merits of this litigation were disposed of by the court's opinion dated November 7, 1962. See *Claus v. Babiarz,* 40 *Del.Ch.* 500, 185 *A.2d* 283. With respect to the taxing of costs and award of counsel fees it was there held that the individual defendants were not liable for costs or for plaintiffs' fees. It was also provided in said opinion that the costs of the proceeding were taxed against The Mayor and Council of Wilmington, a municipal corporation. This is the decision upon plaintiffs'

application for the taxing of costs and award of counsel fees against the municipal corporation.

Plaintiffs first ask that costs aggregating $155.52 as shown upon the records of the Register in Chancery be taxed. Defendant municipal corporation agrees that these costs are properly taxable as constituting the "fee bill." They are allowed.

Plaintiffs next ask that fees of their expert witnesses, Brown and Hickman, in the respective amounts of $550 and $50 be assessed. Defendant municipal corporation does not take exception to the amount of these fees but suggests that the court, in the exercise of its discretion, should refuse the allowance. I am satisfied that these fees are properly chargeable as costs in spite of the fact that the case was decided upon grounds with respect to which the expert testimony had no relation. See *Consolidated Fisheries Co. v. Consolidated Solubles Co.*, 35 *Del.Ch.* 125, 112 *A.2d* 30.

Plaintiffs ask that the premium of $300 on the injunction bond filed by them in this proceeding be taxed. Defendant municipal corporation objects to the taxing of this item on the authority of *Muhleman & Kayhoe, Inc. v. Brown*, 4 *Terry* 481, 50 *A.2d* 92. In the cited case Judge Speakman refused to tax replevin bond premiums. Judge Speakman's ruling was undoubtedly in accord with the weight of authority in state courts in law actions. See 20 *C.J.S. Costs* § 214, p. 451. The rule in the Federal courts is not uniform, but see *Hodgman v. Atlantic Refining Co.*, D.C.Del., 8 *F.2d* 777, wherein Judge Morris, sitting in equity, allowed the premium on a surety bond as costs. The statute pursuant to which this court may award costs, § 5106, *Title* 10, provides that the court may make such order "as is agreeable to equity." Under the authority thus conferred I am satisfied that this court may, in appropriate circumstances, award to successful plaintiffs as costs the premium required to be paid by them for a bond furnished to effectuate a temporary restraining order. Compare *Peyton v. William C. Peyton Corp.*, 23 *Del.Ch.* 365, 8 *A.2d* 89. The cost of the injunction bond involved will be allowed to plaintiffs as costs.

Plaintiffs finally ask for an allowance of counsel fees and expenses. The latter consist of the cost of depositions and trial transcript, totalling $710. The argument advanced by plaintiffs in support of their application for the allowance of attorney fees is that public spirited citizens who are successful in litigation resulting in benefit to the municipal authority of which they are taxpayers should not be shouldered with the entire burden of their suit expenses, and that this court, in doing equity, should require these expenses to be shared by all of the members of the class which they represent. They say that the result of their action here has conferred a substantial benefit upon the municipal corporation and therefore upon all taxpayers. They argue that the court should consider their application as governed by the same principles which apply in stockholders' class actions. Whether or not the analogy thus drawn is appropriate it is not necessary to decide. Assuming its propriety, I am not satisfied that plaintiffs have brought themselves within any recognized exception to the general rule that parties in litigation must pay their own counsel fees and expenses. Let us examine, briefly, the stockholders' actions upon which plaintiffs rely.

In *Maurer v. Internation Re-Insurance Corp.*, 33 *Del.Ch.* 456, 95 *A.2d* 827, the Supreme Court pointed out certain recognized exceptions to the general rule. The court noted that the exceptions to the rule generally arise "in connection with the creation, protection or distribution of a common fund or common property subject to administration by the Court of Chancery," and cited minority stockholders' suits resulting in the recovery of money or property as an example. Other exceptions mentioned by the court were proceedings instituted by a trustee or executor for instructions, receiverships, interpleader suits and cases of the appointment by the court of counsel to uphold the side of a question that no party is willing to advocate. The court noted, however, that the examples cited were "not necessarily all-inclusive." It is obvious that the circumstances here appearing do not bring the case within any of the exceptions mentioned in Maurer.

In *Mencher v. Sachs*, 39 *Del.Ch.* 366, 164 *A.2d* 320, the Supreme Court affirmed an award of counsel fees by this court in a stock-

holders' action in which plaintiff obtained an order for the holding of a stockholders' meeting and for the cancellation of certain stock illegally issued. The court held that the case presented another proper exception to the general rule. In answer to an objection that there was no "dollar basis" for measuring any benefit to the corporation resulting from the cancellation of the illegally issued stock the court observed: "Cancellation of illegally issued stock is in itself a benefit. Although the benefit may be difficult of evaluation in dollars and cents, it is still a benefit."

In *Richman v. DeVal Aerodynamics, Inc.,* 40 *Del.Ch.* 548, 185 *A.2d* 884, the Chancellor awarded counsel fees in a stockholders' class action which resulted in a final judgment enjoining the corporation's board of directors from carrying out proposed action (granting of stock options and the lease or purchase of certain equipment) which a majority in interest of the stockholders considered to be detrimental to the corporation. The Chancellor said: "Recovery of expenses in such cases is predicated on the conferring of some benefit on the interested class and not merely on petitioner himself. * * * The benefit conferred must also be 'substantial' in the sense that its value to the interested class is immediately discernible rather than speculative in character."

While the above cases apparently establish that the award of counsel fees may be proper even though there is no fund brought before the court for administration, they also establish that in order to justify such an award it must appear that a substantial benefit is conferred on the interested class. Applying this principle to the circumstances of the present case, it would seem obvious that plaintiffs here have failed to bring themselves within the limits of the rule. They argue that the present action has resulted in requiring public officials to comply with lawful sales procedures. This, they say, confers a benefit not only upon the plaintiffs but upon all other taxpayers as well. While this result may, in one sense, be regarded as beneficial to the taxpayers of Wilmington, it is not, in my view, the type of benefit which would warrant an award of counsel fees. Moreover, the premise of this alleged benefit is illconceived in the circumstances of the present case. The injunction granted by the

court was based solely on the ground that the Metropolitan bid contained a substantial and material variance from the terms of the proposal. Variance, therefore, was the only procedural matter to which the court gave its attention. No attempt was made to determine whether or not the city officials had otherwise failed to comply with lawful procedures. It should be observed that much of plaintiffs' case on the merits was devoted to an attack upon the procedure followed by city officials but it is extremely doubtful that even if the court had been required to consider the procedural questions that plaintiffs could have prevailed upon this ground. The court found no evidence of fraud or bad faith. In these circumstances questions as to time and conditions of the proposed sale were within the discretion of the city council. *Drexler v. Commissioners of Bethany Beach,* 15 *Del.Ch.* 214, 135 *A.* 484; *Taylor v. Smith,* 13 *Del.Ch.* 39, 115 *A.* 405. Furthermore, as defendants point out, the ground of the court's decision on the merits might well have been properly resolved by defendants themselves, as the variance contained in the Metropolitan offer was not acceptable to the city solicitor who was delegated to work out with Metropolitan the details of the formal contract. In such circumstances, it is difficult to see how any *substantial* benefit was obtained in requiring city officials to reject the Metropolitan offer on the ground of variance.

Plaintiffs also say that their expert testimony conclusively establishes that the city would have lost in excess of $100,000 by a sale in accordance with the Metropolitan offer. While the court in disposing of the case on the merits did not find it necessary to consider the value of the property involved, plaintiffs now ask me to determine valuation to show that their action has resulted in a substantial saving to the city and thereby warrant a finding that counsel fees may be properly awarded to them. In the exercise of discretion, I might well decline to enter upon such a consideration. However, as I do not feel that the testimony of valuation relied upon by plaintiffs is sufficient, in the circumstances, to show any such loss as is alleged, I will now give some consideration to that testimony.

Plaintiffs' expert, Brown, testified that the property involved had a market value of $225,000. This valuation was based on what

Mr. Brown considered to be the highest and best use for the property, namely, for a commercial office building. It is clear from his testimony that he arrived at his valuation on the basis of a professional sale. He gave no consideration to the fact that the property was being exposed to sale by the proposal and bid process. He admittedly had had no experience with this method of property disposal and he frankly acknowledged that he did not know whether such a method would affect the price. He stated that the property in question was not of the type that moves quickly and that it required plenty of exposure to the market. His appraisal was not made with the conditions set forth in the proposal in mind. In his opinion, the conditions specified would tend to lower the market value of the property because they would discourage potential bidders. It was his belief that the advertising campaign was inadequate, particularly with respect to time and detail. While plaintiffs do not suggest that disposition of the subject property by the proposal and bid method was improper, they do contend that the conditions imposed by the city and the insufficient time allowed to bidders to arrange for financing and prepare and submit an intelligent bid discouraged bidding and were therefore improper. But as has already been indicated, in the absence of fraud or bad faith time and conditions of the proposed sale were within the discretion of the governing authorities. *Drexler v. Commissioners of Bethany Beach, supra.* This discretion was in no way limited by the provisions of the surplus property statute, *Chapter 37, Volume 53 Laws of Delaware.* Nor does the fact that competition in the bidding was restricted by the conditions imposed necessarily render the municipal contract invalid. *Bleecker Luncheonette v. Wagner, Sup.,* 141 *N.Y.S.2d* 293, *aff'd* 286 *App.Div.* 828, 143 *N.Y.S.2d* 628; *Summer Cottagers' Association v. City of Cape May,* 34 *N.J.Super.* 67, 111 *A.2d* 435, *aff'd* 19 *N.J.* 493, 117 *A.2d* 585. It is apparent, therefore, that plaintiffs' expert in determining the market value of the property involved should have given consideration to the conditions of the proposal and the time allowed bidders to prepare their bids.

The record of this case indicates that the Wilmington Planning Commission report of August 1, 1961 recommended that in the dis-

posal of the property involved the city should be more concerned with the use to which the property would be put by the purchaser and the prompt tax return therefrom rather than the price to be derived from the sale. This recommendation was apparently accepted by the members of the council. Obviously, plaintiffs' expert did not take this into consideration in evaluating the worth of the property. Though plaintiffs, in the case on the merits, challenged the propriety of consideration being given to this factor, I am satisfied that it was a proper matter for the council to consider in the acceptance of a bid. It has been held by eminent authority that a municipality in disposing of property is not required to consider only the price which is offered. It may take into consideration its economical, financial and industrial interests, including the tax yield from proposed development. *Roberts v. Northern Pacific R. R. Co.,* 158 *U.S.* 1, 15 *S.Ct.* 756, 39 *L.Ed.* 873; *Haesloop v. City Council of Charleston,* 123 *S.C.* 272, 115 *S.E.* 596; *Quackenbush v. City of Cheyenne,* 52 *Wyo.* 146, 70 *P.2d* 577.

In view of the discretion vested in the municipal authorities to attach conditions to the proposal and to give consideration in the acceptance of a bid to factors other than the amount thereof, it is obvious that an appraisal made on the basis of the value of the property upon a professional sale is of little aid to the court in determining the issue of value under an admittedly proper method of disposal.

Plaintiffs have cited cases in other jurisdictions wherein counsel fees have been allowed in successful taxpayers' suits. It is not necessary to give consideration to these cases because in each of them it is obvious that a substantial benefit, in the sense used by the Chancellor in *Richman v. DeVal Aerodynamics, supra,* was conferred upon the interested class. Here, on the contrary, the benefit is not substantial but is speculative at best.

Plaintiffs suggest that if the benefit derived by the city can not now be evaluated, determination of their application be postponed until after the property has been sold. There is no duty upon the city to again offer this property for sale. Conceivably some municipal

use therefor may be found. Whether it will ever be offered for sale is uncertain. In these circumstances determination of the issue involved should not be postponed.

The application for the award of counsel fees and expenses is denied. Order on notice.