PORSH BUILDERS, INC. v. CITY OF WINSTON-SALEM, a NORTH CAROLINA MUNICIPAL CORPORATION; WAYNE A. CORPENING, MAYOR; JON B. DeVRIES; EUGENE F. GROCE; ERNESTINE WILSON; VIRGINIA H. NEWELL; JOHN J. CAVANAGH; ROBERT S. NORTHINGTON, JR.; VIVIAN K. BURKE; LARRY D. LITTLE, MEMBERS OF THE BOARD OF ALDERMEN FOR THE CITY OF WINSTON-SALEM, AND THE REDEVELOPMENT COMMISSION OF WINSTON-SALEM, a POLITICAL SUBDIVISION OF THE CITY OF WINSTON-SALEM

No. 96

(Filed 7 April 1981)

1. Municipal Corporations § 4.5— sale of redevelopment commission property — highest responsible bidder

In the statute providing for sale of municipal redevelopment commission property to the "highest responsible bidder," G.S. 160A-514(d), the term "responsible" was intended to give the municipality power to use its discretion only to the extent of determining whether a bidder had the resources and financial ability to complete the project set forth in his proposal for the development of the property and does not allow the municipality to consider which bid best complies with the redevelopment plan.

2. Municipal Corporations § 4.5— sale of redevelopment commission property — rejection of highest bid

The provision of G.S. 160A-514(d) giving the governing board of a munici-

pality the power to reject all bids for redevelopment commission property does not impliedly authorize the board to reject the highest bid if a lower bid "more nearly" complies with the redevelopment plan.

**3. Municipal Corporations § 4.5— sale of redevelopment commission property — authority of municipal governing body to approve sale**

　　The provision of G.S. 160A-514(d) making sales of municipal redevelopment commission property subject to the approval of the governing body of the municipality merely places final authority in the board to determine whether all submitted bids satisfy the zoning requirements of the district and are in general conformity with the redevelopment plan and does not give the board authority to determine which bid "more nearly" complies with the redevelopment plan.

**4. Municipal Corporations § 4.5— sale of redevelopment commission property — necessity for accepting high bid**

　　In selling the property of a municipal redevelopment commission to private developers, the municipal board of aldermen is required to accept the "highest responsible bid," if any, where that bid complies with the applicable zoning restrictions and the redevelopment plan for the property to be sold.

　　Justice MEYER did not participate in the consideration or decision of this case.

　　Justice CARLTON dissenting.

DEFENDANTS appeal as a matter of right from a decision of the Court of Appeals, 47 N.C. App. 661, 267 S.E. 2d 697 (1980) (opinion by *Webb, J.*, with *Vaughn, J.*, concurring and *Martin (Harry C.), J.*, dissenting). The Court of Appeals reversed summary judgment in favor of defendants entered by *Walker, S.J.*, at the 20 November 1978 Civil Session of Superior Court, FORSYTH County. This case was argued as No. 116, Fall Term, 1980.

　　Plaintiff instituted this action on 17 October 1978, seeking an order directing the Mayor and Board of Aldermen of Winston-Salem to accept a bid made by plaintiff to buy a certain parcel of real estate in the City of Winston-Salem, or, in the alternative, an order awarding damages. The parcel at issue was acquired by the City as a part of a tract of land to be developed in accordance with the Crystal Towers Community Development Plan. The parcel, designated as Parcel 1 of the Crystal Towers Community Development Area, was offered for sale by the Winston-Salem Redevelopment Commission pursuant to the terms of G.S. 160A-514. Plaintiff submitted a bid of $6,550.00 with a plan to build six apartment units upon the property. One other bid was submitted by Mr. John Ozmun in the amount of $4,750.00, with a proposal to move a single family dwelling onto the parcel. The City of Winston-Salem Plan-

ning Staff determined that both proposals met the zoning require-
ments of the area and satisfied the residential purposes of the
Crystal Towers Community Development Plan. The Planning Staff
further opined that Mr. Ozmun's proposal "more nearly" complied
with the Development Plan, in that if Parcel 1 were sold to Mr.
Ozmun, he would agree to sell certain other property to the City for
development as housing for the elderly, one of the goals specified in
the Development Plan. The Winston-Salem Board of Aldermen
rejected plaintiff's bid and accepted Mr. Ozmun's bid on 16 October
1978 by a five to four vote, with the Mayor casting the deciding vote.

The Forsyth County Superior Court granted defendants' mo-
tion for summary judgment on 20 November 1978 and on 21 Novem-
ber 1978 denied plaintiff's motion for injunctive relief pending
appeal. The Court of Appeals, Judge Harry C. Martin dissenting,
reversed summary judgment entered in favor of defendants, hold-
ing that if the Board of Aldermen elected to accept either of the two
bids, it would have to accept plaintiff's bid as the "highest responsi-
ble bid" under the language of G.S. 160A-514(d). Defendants appeal
as a matter of right pursuant to G.S. 7A-30(2).

*Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr.;
City Attorney Ronald G. Seeber; and Assistant City Attorney Ralph
D. Karpinos for defendant-appellants.*

*Frye, Booth and Porter by Leslie G. Frye and John P. Van
Zandt, III, for plaintiff-appellee.*

COPELAND, Justice.

The sole question presented by this appeal is whether defend-
ants were required under the language of G.S. 160A-514 to accept
plaintiff's bid as the "highest responsible bid," if defendants
decided to accept either bid submitted. For the reasons stated
below, we find the Court of Appeals' majority opinion correct in its
interpretation of the statute as allowing defendants to either reject
all bids or accept plaintiff's "highest responsible bid," and hold that
summary judgment entered in favor of defendants was properly
reversed.

G.S. 160A-514(c) and (d) govern the sale to private developers
of property owned by the Winston-Salem Redevelopment Commis-
sion and provide:

Builders, Inc. v. City of Winston-Salem

"(c) A commission may sell, exchange, or otherwise transfer real property or any interest therein in a redevelopment project area to any redeveloper for residential, recreational, commercial, industrial or other uses or for public use in accordance with the redevelopment plan, subject to such covenants, conditions and restrictions as may be deemed to be in the public interest or to carry out the purposes of this Article; provided that such sale, exchange or other transfer, and any agreement relating thereto, may be made only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality and after public notice and award as specified in subsection (d) below.

(d) Except as hereinafter specified, no sale of any property by the commission or agreement relating thereto shall be effected except after advertisements, bids and award as hereinafter set out. The commission shall, by public notice, by publication once a week for two consecutive weeks in a newspaper having general circulation in the municipality, invite proposals and shall make available all pertinent information to any persons interested in undertaking a purchase of property or the redevelopment of an area or any part thereof. The commission may require such bid bonds as it deems appropriate. After receipt of all bids, the sale shall be made to the highest responsible bidder. All bids may be rejected. All sales shall be subject to the approval of the governing body of the municipality . . . ."

In its conclusions of law supporting entry of summary judgment in favor of defendants, the trial court stated that G.S. 160A-514(c) and (d) confer upon defendants the discretion to consider more than the dollar amount bid in determining which bid, if any, to accept. Specifically, the trial court found defendants authorized to consider "the redevelopment plan of each bidder, the housing needs of the City, the housing policies of the City, the revenue to be derived from each bid," and other factors relevant to the property in question. We agree with the majority decision of the Court of Appeals that neither subsection of G.S. 160A-514 can be interpreted to give defendants the discretionary powers recited by the trial court.

554                    IN THE SUPREME COURT                    [302

Municipal corporations are created by legislative enactment and possess only those powers conferred in the express language of a statute and those necessarily implied by law therefrom. *Campbell v. First Baptist Church*, 298 N.C. 476, 259 S.E. 2d 558 (1979); Matter of Ordinance of Annexation No. 1977-4, 296 N.C. 1, 249 S.E. 2d 698 (1978); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897 (1972). The municipality may not exercise any power not granted to it, and possesses no inherent authority to exercise powers either expressly or impliedly prohibited by statute. *Greene v. City of Winston-Salem*, 287 N.C. 66, 213 S.E. 2d 231 (1975). In addition, it is generally held that statutory delegations of power to municipalities should be strictly construed, resolving any ambiguity against the corporation's authority to exercise the power. This Court has long held that "[a]ny fair, reasonable doubt concerning the existence of the power is resolved against the corporation." *Shaw v. City of Asheville*, 269 N.C. 90, 97, 152 S.E. 2d 139, 144 (1967), *quoting from Elizabeth City v. Banks*, 150 N.C. 407, 412, 64 S.E. 189, 190 (1909). *See also* 56 Am. Jur. 2d *Municipal Corporations* §§ 195, 210 (1971).

[1]    Applying the above rules of statutory interpretation to the language of G.S. 160A-514 (c) and (d), we find that the statute cannot be construed to vest the amount of broad discretion in defendants that was contemplated by the trial court. Subsection (d) specifically directs that "[a]fter receipt of all bids, the sale *shall* be made to the highest responsible bidder." (Emphasis added.) Defendants contend that by the use of the word "responsible," the legislature intended to give the governing board of a municipality broad discretion to accept a lower bid if it determines that the lower bid will make a more effective contribution to the redevelopment plan. We disagree. The adjective "responsible" modifies the term "bidder," not the term "bid." "Responsible" is defined in Black's Law Dictionary 1180 (5th ed. 1979) as follows:

> "Liable; legally accountable or answerable. Able to pay a sum for which he is or may become liable, or to discharge an obligation which he may be under."

We hold that the term "responsible" in G.S. 160A-514(d) was intended to give the municipality power to use its discretion only to the extent of determining whether a bidder has the resources and financial ability to complete the project set forth in his proposal for the development of the property. This phrase does not allow the

municipality to consider which bid best complies with the redevelopment plan.

[2]   Likewise, we reject defendants' allegation that since subsection (d) of the statutue expressly empowers the governing board of a municipality to reject all bids, it impliedly authorizes the board to reject the highest bid if a lower bid "more nearly" complies with the redevelopment plan. Again, there is no language in the statute to support defendants' proposed interpretation. The clear meaning of the language of subsection (d) is that although the municipality may reject all bids, if any bid is accepted, it must be the "highest responsible bid."

Our interpretation is supported by this Court's recent opinion construing the same statute in *Campbell v. First Baptist Church, supra.* There Chief Justice Branch, writing for the Court, stated:

"As we read the statute, each subsection confers upon a redevelopment commission the authority to perform certain acts necessary to carry out the redevelopment project, and the use of the word 'may' merely denotes that the commission is not *required* to do each and every act authorized in G.S. 160A-514. However, should a commission elect to exercise the authority conferred upon it by a particular section, then the procedural requirements 'shall' be followed." 298 N.C. at 483, 259 S.E. 2d at 563.

Subsection (c) provides that a municipality *may* sell property, and if it chooses to exercise this power, the sale must be made according to the procedural requirements set forth in subsection (d). One requirement specified under subsection (d) is that "[a]fter receipt of all bids, the sale shall be made to the highest responsible bidder." The use of the term "shall" renders the procedural requirement mandatory, if the governing body of the municipality decides to accept any bid.

[3]   Defendants further maintain that the authority to use the discretionary powers outlined by the trial court stems from the provision in subsection (d) that "[a]ll sales shall be subject to the approval of the governing body of the municipality." They argue that the express delegation of authority to approve the sale impliedly gives them the power to determine which bid "more nearly" complies with the redevelopment plan. Were we to accept

defendants' argument, the provision that the sale shall be made to the "highest responsible bidder" would be rendered meaningless. If a sale could only be "approved" by the governing board after the board determined that the sale was being made to the bidder whose plan best satisfied the purposes and specifications of the redevelopment plan, then no more than one "responsible bidder" could exist and there would have been no need for the legislature to specify that the sale shall be made to the *highest* responsible bidder. We believe the provision vesting authority in the governing board to approve the sale was merely intended to place final authority in the board to determine whether all submitted bids satisfy the zoning requirements of the district and are in general conformity with the redevelopment plan. The clause also allows the board to ultimately decide whether all bids should be rejected. Thus, the approval provision serves as a protective measure to insure that the Redevelopment Commission's actions under the statute are in conformity with the zoning laws and the redevelopment plan. This interpretation reconciles the approval clause and the requirement that the sale shall be made to the highest responsible bidder, so that each sentence of the statute remains fully effective. It is well established that a statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage. *Jolly v. Wright,* 300 N.C. 83, 265 S.E. 2d 135 (1980); *Williams v. Williams,* 299 N.C. 174, 261 S.E. 2d 849 (1980); *State Ex Rel. Commissioner of Insurance v. North Carolina Automobile Rate Administrative Office,* 294 N.C. 60, 241 S.E. 2d 324 (1978). Our interpretation of G.S. 160A-514(c) and (d) complies with this rule of construction and comports with the legislature's intent.

[4] For the foregoing reasons, we affirm the Court of Appeals' majority holding that under the language of G.S. 160A-514, defendants are required to accept the "highest responsible bid," if any, where that bid is in compliance with the applicable zoning restrictions and redevelopment plan for the property to be sold. The Court of Appeals' decision reversing summary judgment in favor of defendants is

Affirmed.

Justice MEYER did not participate in the consideration or decision of this case.

Justice CARLTON dissenting.

I respectfully dissent from the majority opinion because I think it incorrectly interprets the intent of our Legislature with respect to the responsibility of a municipal governing body in reviewing the sale to private developers of property owned by a redevelopment commission. In my opinion, this decision seriously impairs the ability of city officials to manage responsibly the business affairs of the city with which they are entrusted.

The sole issue presented by this appeal is the interpretation of the requirement in G.S. 160A-514(d) that "[a]fter receipt of all bids, the sale shall be made to the highest responsible bidder." The majority holds that the term "responsible" in the statute:

> was intended to give the municipality power to use its discretion *only* to the extent of determining whether a bidder has the resources and financial ability to complete the project set forth in his proposal for the development of the property. *This phrase does not allow the municipality to consider which bid best complies with the redevelopment plan.*

(Emphases added.) With this narrow, restrictive interpretation of the statute I strongly disagree.

In reaching its interpretation of the statutory phrase "highest responsible bidder," I think that the majority has ignored the cardinal rule of statutory construction: In ascertaining legislative intent, courts should consider the *language* of the statute, the *spirit* of the statute and what it seeks to *accomplish. Stevenson v. Durham,* 281 N.C. 300, 303, 188 S.E. 2d 281, 283 (1972). In reviewing the language, spirit and goal of G.S. 160A-514 I think that the trial court properly concluded that the statute authorizes a city governing board "to give consideration to the redevelopment plan of each bidder, the housing needs of the City, the housing policies of the City, the revenue to be derived from each bid, and factors other than merely the dollar amount bid for the property in question." The majority reaches a contrary conclusion with absolutely no citation of authority.

In first reviewing the *language* of the statute, the statutory phrase in question refers to the "highest responsible bidder." To hold, as the majority does, that this phrase refers only to determin-

ing whether a bidder has sufficient financial resources to make good his bid and to perform his proposed plan is to ignore completely the precise legislative usage of the word "responsible." The statute does not provide, as the majority indicates, that a sale shall be made to the *highest bidder*. Had the Legislature intended for city boards to limit their consideration solely to dollars and cents, why insert the word "responsible?" The word was used, I submit, because the Legislature intended this phrase to mean more than mere financial considerations.

In reading G.S. 160A-514 in conjunction with the remaining statutes in Article 22, Chapter 160A, the *spirit* and *goal* of the statute in question becomes clear, and the legislative intent in employing the phrase "highest responsible bidder" becomes easily discernible. As the trial court apparently concluded, this Article of our General Statutes is obviously concerned with factors such as the redevelopment plan of bidders, the housing needs and policies of a city, the revenue to be derived by a city from bids received, and other factors other than mere dollar amounts. *See* G.S. § 160A-513 (1976). To hold otherwise would be to interpret as meaningless the statutory provision requiring that bids and sales must be approved by the governing body, G.S. § 160A-514(d). Under the majority's interpretation, such approval would be merely a mechanical and ministerial act which could be performed by any city employee by simply comparing the bid amounts. I do not believe this to be spirit or goal of our redevelopment statutes.

In reaching its decision, I think the majority has ignored the clear language of G.S. 160A-514(c). As I read this statute, it limits sales by redevelopment commissions to bidders whose plans are consistent with the redevelopment or community development plan for an area and requires the governing body's, in this case the Board of Aldermen's, approval of such sales. By this statute, it seems clear to me that our Legislature has authorized the Board of Aldermen to determine which plans are consistent with, or more consistent with, the redevelopment plan. Here, a majority of the Board concluded that the Ozmun bid was more consistent with the community plan and more fully achieved the objectives sought to be achieved by the plan. Clearly, then, in determining who is the "highest responsible bidder," the Board of Aldermen is authorized, and indeed required, to consider which plan would be most consistent with the redevelopment plan of the city.

Builders, Inc. v. City of Winston-Salem

I certainly agree with the majority that the phrase "highest responsible bidder" refers to financial considerations. I cannot agree, however, with the majority's holding that the only financial consideration is that of the dollar amount of the bids submitted. Other financial considerations must surely be more important to a city board. The board should be able to consider which plans submitted would generate the most tax revenue for the city in the long run and which plan would be most consistent with the housing goals and policies of the city. In other words, it is inconceivable to me that the Legislature intended that a governing body could not consider, in determining the "highest responsible bidder," the overall financial impact upon a city when making its determination as to the "highest responsible bidder."

The instant case is illustrative of this point. The record discloses that the City was committed to acquire for Section 8 Elderly Housing a lot across the street from the one here in question. The minutes of the Board meeting of 16 October 1978 indicate that Mr. Ozmun held an option on this lot and intended to move onto it a house he had purchased. This would make it necessary for the City to purchase a house and lot, rather than a lot only, if Parcel 1 (the lot sold by the City to Ozmun) were sold to Porsh Builders. The Ozmun bid committed Mr. Ozmun to move his house onto Parcel 1 rather than the Section 8 housing lot. Obviously, the action of the Board of Aldermen precluded the City from having to expend considerable sums in purchasing a house and lot. Surely this savings would exceed the difference between the Ozmun and Porsh bids. Moreover, the minutes established that the Ozmun bid would generate more tax funds for the City than the Porsh bid. The record discloses that approval of the Ozmun bid would result in the receipt into the City of substantial rent subsidy funds and would make available eleven additional units of low-rent housing in the City. I believe that these are valid considerations in determining which is the "highest responsible bidder."

While the majority cites no authority for its holding, my view is supported by decisions from other jurisdictions. In *Claus v. Babiarz*, 41 Del. Ch. 158, 165, 190 A. 2d 19, 23 (1963), the court said, "It has been held by eminent authority that a municipality in disposing of property is not required to consider only the price which is offered. It may take into consideration its economical, financial and industrial interest, including the tax yield from proposed develop-

ment." (Citations omitted.) *See Futterman-Marott Corporation v. City of Fort Wayne,* 248 Ind. 503, 230 N.E. 2d 102 (1967).

My view is also supported by the well-established rule in this jurisdiction that, "The courts will not interfere with the exercise of discretionary powers conferred on municipal corporations for the public welfare, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion . . . ." 9 *Strong's North Carolina Index 3d,* Municipal Corporations § 4 at p. 134 (1977), and cases cited therein. I believe that the power granted by G.S. 160A-514 is discretionary and I find no contention here that this Board abused its discretion. Indeed, I think the Board, based on the record before us, properly exercised its discretion. The record establishes that the Board considered numerous factors before reaching its determination. For example, it considered (1) the relationship between the Ozmun proposal and the availability to the City of another site for Section 8 housing, (2) federal funding of approximately $300,000 which would be available for Section 8 housing, (3) federal rental assistant payments of approximately $1.3 million over a forty-year period for the maintenance of tenants in the proposed Section 8 housing project, (4) the City Planning Staff's determination that the Ozmun plan more nearly complied with the redevelopment plan of the City, (5) the greater increase in housing stock which would result from acceptance of the Ozmun bid than would result from acceptance of the Porsh proposal, (6) the increase in availability of housing for the elderly low-income citizens in the City which would result from acceptance of the Ozmun proposal, and (7) a substantial increase in the tax base and tax revenues which would result from acceptance of the Ozmun proposal. In light of these factors, the relatively small difference in bids of $1,800 pales in comparison. To ignore the enumerated factors and require the City to accept the bid on a mere $1,800 difference, as the majority would require, would not only, in my view, constitute a failure to award to the highest *responsible* bidder, such action would be highly irresponsible.

In my opinion, the majority's decision will seriously impair the ability of city boards to provide proper fiscal management of city affairs. It is inconceivable to me that our Legislature intended such a result. The majority result is wholly unreasonable when the practical ramifications of its result are considered. For example, it would require a city (1) to ignore the anticipated tax revenue or

other municipal revenues to be generated by the bids submitted, (2) to ignore the housing policies or other applicable policies of the city, (3) to accept a bid with conditions unacceptable to the city, and (4) to accept the highest dollar bid even though, as here, the public notice of sale specifically states that the redevelopment plan of the bidder must first be approved by the Board of Aldermen. Surely such relevant factors as these are not to be ignored by men and women duly elected to provide sound business management to the affairs of North Carolina's municipalities.

The absurdity of the majority result is best illustrated by a hypothetical. If Bidder A submitted a bid of $50,000 for a particular area on which it planned construction which would result in a tax base of $100,000 and Bidder B submitted a bid of $49,500 for the same property on which it planned construction which would result in a tax base of $1,000,000, the majority would hold that the "highest responsible bidder" is Bidder A because his bid was $500 more than Bidder B. In other words, the majority would require the city to take the $500 bid differential and ignore a $900,000 tax base differential which would benefit the city with tax revenues for years to come.

Such a result violates not only what I perceive to be the legislative intent; it flies in the face of what I know to be plain common sense.