MORRIS COMMUNICATIONS CORPORATION, D/B/A FAIRWAY OUTDOOR ADVERTIS-
ING; OUTDOOR COMMUNICATIONS, INC.; AND MAPLE COVE, INC., PLAINTIFFS V.
THE CITY OF ASHEVILLE, A NORTH CAROLINA MUNICIPAL CORPORATION, DEFENDANT

No. COA00-219

(Filed 21 August 2001)

### 1. Zoning— ordinance—outdoor advertising billboards—protest petition provisions—text amendments

The trial court did not err by concluding that the passage of zoning ordinance number 2427 concerning outdoor advertising billboards was subject to the protest petition provisions of N.C.G.S. §§ 160A-385 and 160A-386 even though defendant contends the protest petition procedure applies to only zoning map amendments and not to amendments to the text of a zoning ordinance, because: (1) the legislature intended for the protest procedure in N.C.G.S. § 160A-385 to apply to both zoning map amendments and amendments to the text of zoning ordinances since the statute speaks of zoning regulations, restrictions, and zone boundaries; (2) N.C.G.S. § 160A-386 expressly refers to changes in or amendments to zoning ordinances or zoning maps; and (3) a text amendment which adversely affects the rights of property owners should be treated no differently than a map amendment which has such adverse effect.

### 2. Zoning— ordinance—outdoor advertising billboards—class of lots affected

The trial court erred by concluding that the class of lots affected by zoning ordinance number 2427 concerning outdoor advertising billboards are those lots upon which off-premises signs affected by the seven-year amortization provisions of the ordinance were located at the time of its passage, because the ordinance included a larger area than just those lots on which non-conforming signs subject to amortization were located at the time of its passage.

### 3. Zoning— ordinance—outdoor advertising billboards—city's duties under protest petition statute

The trial court did not err by failing to conclude as a mater of law that defendant city failed to carry out its duties under the protest petition statute of N.C.G.S. § 160A-386 used by plaintiffs and others to protest proposed zoning ordinances concerning outdoor advertising billboards, because: (1) defendant city had a

prescribed form for protest petitions under N.C.G.S. § 160A-386 which was used by plaintiffs and others in submitting their protests to the proposed ordinances, and the city attorney reviewed the protest petitions and the proposed ordinances and came to the legal conclusion that the protest petition procedure did not apply to text amendments; (2) the city performed calculations to determine whether the twenty percent threshold under N.C.G.S. § 160A-385 had been met; and (3) the city took substantial action to determine whether a three-fourths vote of the city council was required.

Appeal by defendant and cross appeal by plaintiffs from order entered 27 September 1999 by Judge Loto Greenlee Caviness in Buncombe County Superior Court. Heard in the Court of Appeals 12 January 2001.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Albert L. Sneed, Jr., and Craig D. Justus, for plaintiff-appellee/cross-appellant Morris Communications, Inc.*

*Long, Parker, Warren & Jones, P.A., by Robert B. Long, Jr., and Philip S. Anderson, for plaintiffs-appellees/cross-appellants Outdoor Communications, Inc., and Maple Cove, Inc.*

*Roberts & Stevens, P.A., by Sarah Patterson Brison Meldrum; Kilpatrick Stockton, LLP, by Robert C. Stephens; and Robert W. Oast, Jr., City Attorney, for defendant-appellant/cross-appellee.*

CAMPBELL, Judge.

Defendant appeals and plaintiffs cross appeal from an order of the trial court granting partial summary judgment to plaintiffs and denying defendant's motion for partial summary judgment. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiffs, Morris Communications Corp., d/b/a Fairway Outdoor Advertising, Inc. (Fairway), Outdoor Communications, Inc. (OCI), and Maple Cove, Inc. (Maple), own and/or lease various properties within the zoning jurisdiction of defendant City of Asheville (the City). Fairway and OCI own and maintain advertising billboards on the properties they own and/or lease. Maple owns property which it rents to others and upon which advertising billboards are located.

The following overview of the history of the City's regulation of advertising billboards is relevant to the instant case: In 1977, the

MORRIS COMMUNICATIONS CORP. v. CITY OF ASHEVILLE

[145 N.C. App. 597 (2001)]

Asheville City Council (City Council) adopted zoning regulations (1977 Sign Regulations) regarding "off-premises signs" (signs used for the purpose of displaying, advertising, identifying or directing attention to a business, products, operations or services sold or offered at a site other than the site where such sign is displayed) located within the City's zoning jurisdiction. The 1977 Sign Regulations permitted "off-premises signs," including billboards and directional signs, in all commercial and industrial zoning districts, subject to area and height limitations. The 1977 Sign Regulations also provided that any existing "off-premises sign" which exceeded the area and height limitations by ten percent (10%) or less would be considered a "conforming" sign under the regulations, and all other existing "off-premises signs" which exceeded the area and height limitations would be considered "non-conforming." These "non-conforming" signs were "grand-fathered" by the regulations, allowing them to remain in perpetuity, so long as they were not altered in any significant way.

In August 1990, the City Council amended the 1977 Sign Regulations related to "off-premises signs," reducing the area and height limitations, mandating certain spacing requirements, and requiring that all "non-conforming" signs under the 1977 Sign Regulations be brought into conformity with the 1990 Regulations or be removed (amortized) within five years without monetary compensation to the owner. Those "off-premises signs" that were "conforming" under the 1977 Sign Regulations but were "non-conforming" under the 1990 Regulations were required to be brought into conformity or amortized within seven years.

In February 1995, the City Council amended the 1990 Regulations to allow "off-premises signs" that conformed with the 1977 Regulations to avoid amortization. In May 1997, the Council repealed all of its zoning laws, and enacted Chapter 7 of the Unified Development Ordinance (UDO), carrying forward the protection from amortization afforded those "off-premises signs" that did not conform under the 1990 Regulations, but did conform under the 1977 Sign Regulations. On 16 September 1997, the City Council directed its planning and development staff to study possible revisions to the UDO as it pertained to outdoor advertising billboards. Specifically, the Council ordered studies of three proposed ordinances which would amend the text of Section 7-13 of the UDO. One of the proposed ordinances (Ordinance No. 2426) severely limited the area and height of "off-premises signs," effectively prohibiting future bill-

boards within the City's zoning jurisdiction. The other two proposals were alternative versions of an ordinance (Ordinance No. 2427) requiring amortization of "non-conforming" signs.

A public hearing before the City Council was scheduled for 11 November 1997 to consider these proposed amendments. Public notice of this hearing was given by newspaper publication.

Prior to the public hearing, plaintiffs Fairway and OCI obtained from the City's Planning and Development Office a list of "off-premises signs," including billboards and directional signs, located within the City's zoning jurisdiction. This list, which was compiled from the City's 1990 sign survey database and field survey updates conducted in 1996, identified the property owner, property address and acreage of each lot upon which an "off-premises sign" was located within the City's zoning jurisdiction. The list also identified the owner of each of these "off-premises signs." Based on this information, Fairway and OCI obtained protest petition signatures from the owners of 49 lots on which "off-premises signs" were located. Fairway and OCI also signed protest petitions as owners of property, and as owners of the vast majority of billboards required to be amortized under the proposed ordinances.

On 6 November 1997, three working days prior to the City Council's public hearing, plaintiffs filed with the City Clerk the aforementioned protest petitions pursuant to N.C. Gen. Stat. §§ 160A-385 and 160A-386. Each petition was entitled "Protest of Proposed Zoning Amendment" and referenced "Proposed Amendment of Section 7-13 of the Zoning Ordinance of the City of Asheville." The City Attorney and City Planning Director subsequently met to coordinate a review of the petitions to determine whether they were valid and effective under N.C.G.S. §§ 160A-385 and 160A-386, and to determine whether a three-fourths vote of the City Council would be required for passage of the proposed ordinances.

In making this determination, the City's planning and development staff calculated the acreage of the entire zoning jurisdiction of the City, including the City's extraterritorial jurisdiction, to be 32,700 acres. The staff also determined the acreage within the City's zoning jurisdiction that was at that time zoned to permit "off-premises signs" to be 4,928 acres. The staff then determined the acreage of the lots on which "off-premises signs" were located, based on the list generated from the City's updated 1990 sign survey database, to be 243.89 acres.

Having established these three figures, the City staff was advised to assume that each of the lots shown on the City's updated 1990 sign survey database in fact had an "off-premises sign" located on it. The City staff was also advised to assume that the persons whose signatures appeared on the protest petitions as signing for a particular lot had actual authority to do so. Using the acreage of the lots on which "off-premises signs" were located according to the sign survey database (243.89 acres) as the numerator and the acreage of the area within the City's zoning jurisdiction zoned to permit "off-premises signs" (4,928 acres) as the denominator, the staff determined that the protest petitions that had been filed represented 4.95% of the area of the lots included in the proposed change, well below the twenty percent (20%) required to trigger the three-fourths vote requirement under N.C.G.S. § 160A-385. The staff also made the calculation using the City's entire zoning jurisdiction (32,700 acres) as the denominator, and determined that the three-fourths vote requirement would, *a fortiori*, not be triggered by that calculation. Therefore, the City Attorney advised the City Council that only a simple majority vote was required for passage of the proposed ordinances.

At the 11 November 1997 public hearing, the City Council unanimously approved Ordinance No. 2426, prohibiting new "off-premises signs" larger than six (6) square feet in size. The City Council then approved Ordinance No. 2427, which required amortization within seven years of all "non-conforming" signs, whether "grand-fathered" by earlier regulations or not, by a vote of 4 to 3. As required by N.C. Gen. Stat. § 160A-75, the City Council held a second reading of Ordinance No. 2427, and it was finally adopted by a 4 to 3 vote on 25 November 1997.

On 9 January 1998, plaintiffs filed the complaint in the instant action. In count one, plaintiffs sought a declaratory judgment that Ordinance No. 2427 had been enacted in violation of N.C.G.S. §§ 160A-385 and 160A-386, thereby making it invalid. In count two, plaintiffs alleged that Ordinance No. 2427 was unconstitutional, or, in the alternative, that plaintiffs were entitled to just compensation for the taking of their private property. Defendant filed its answer on 30 March 1998.

On 4 August 1999, plaintiffs moved for summary judgment on count one of their complaint. On 5 August 1999, the City filed its own motion for summary judgment on count one. On 27 September 1999, Judge Loto Greenlee Caviness entered an order granting plaintiffs'

motion for partial summary judgment, and denying defendant's motion for partial summary judgment, making the following conclusions of law:

1. Asheville Ordinance 2427 and its passage are subject to the zoning laws of North Carolina including those applicable to protest petitions. G.S. § 160A-385 and § 160A-386.

2. The class of lots affected by Ordinance 2427 are the lots upon which off-premise signs affected by the seven (7) year amortization provisions of Ordinance 2427 were located at the time of its passage.

3. That there are disputes that are not resolved by this Order for Partial Summary Judgment as to whether or not the City of Asheville carried out its duties under the protest petition law as mandated by *Unruh v. City of Asheville*, 97 N.C. App. 287 (1990) and, if so, whether or not the protest petitions filed constitute twenty (20%) percent of the lots included in the affected class.

The trial court "[f]urther [o]rdered that there is no just reason for delay of an appeal of the denial of Defendant's Motion for Summary Judgment and the granting of Plaintiffs' Motion for Partial Summary Judgment," and "[t]his ruling affects a substantial right of Defendant pursuant of N.C.G.S. § 1-277 and Rule 54(b) of the North Carolina Rules of Civil Procedure."

Defendant filed notice of appeal on 25 October 1999, and a petition for writ of certiorari on 26 October 1999. Plaintiffs filed a cross appeal pursuant to N.C. R. App. P. 3(c) on 4 November 1999, along with their own petition for writ of certiorari. The parties' petitions for certiorari were dismissed without prejudice to the parties' rights to re-file them after the record on appeal was filed in this case. After the record on appeal was filed, both parties re-filed their petitions for writ of certiorari. Defendant subsequently filed a motion to dismiss plaintiffs' petition for certiorari. These petitions are currently pending before this Court.

We begin by noting that the denial of a motion for summary judgment does not qualify as an appealable order. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 424, 302 S.E.2d 868, 871 (1983). Likewise, "[a] grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C.

App. 19, 23, 437 S.E.2d 674, 677 (1993). The order appealed from in the instant case granted partial summary judgment in favor of plaintiffs and denied defendant's motion for partial summary judgment; therefore, it is an interlocutory order.

"As a general rule, a party has no right to immediate appellate review of an interlocutory order." *Tise v. Yates Construction Co.*, 122 N.C. App. 582, 584, 471 S.E.2d 102, 105 (1996). However, appeal from an interlocutory order is permissible under two specific statutory exceptions. *Town Center Assoc. v. Y & C Corp.*, 127 N.C. App. 381, 384, 489 S.E.2d 434, 436 (1997). "First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie." *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995). The order appealed from in the instant case contained the trial court's certification pursuant to Rule 54(b); however, a trial court cannot make its decree immediately appealable under Rule 54(b) by simply denominating it a final judgment if it is not such a judgment. *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 491, 251 S.E.2d 443, 447 (1979). Here, the trial court's order failed to fully resolve any of the parties' claims, and, therefore, it is not a final judgment under Rule 54(b).

The other situation in which an immediate appeal may be taken from an interlocutory order is when, pursuant to N.C. Gen. Stat. §§ 1-277 and 7A-27(d), "the trial court's order (1) affects a substantial right, (2) in effect determines the action and prevents a judgment from which an appeal might be taken, (3) discontinues an action, or (4) grants or refuses a new trial." *Town Center Assoc.*, 127 N.C. App. at 385, 489 S.E.2d at 436; N.C. Gen. Stat. § 1-277 (2000); N.C. Gen. Stat. § 7A-27(d) (2000). Only the substantial right exception is potentially applicable in the instant case. However, we need not determine whether the trial court's order affects a "substantial right" pursuant to N.C.G.S. §§ 1-277 and 7A-27(d), because we have elected to exercise our discretionary authority under N.C. R. App. P. 21(a)(1) and allow each parties' petition for writ of certiorari in order to address the merits of this appeal. We have so chosen to exercise our discretion because the major issues presented on appeal are strictly legal and their resolution is not dependent on further factual development. *See Lamb*, 308 N.C. at 425, 302 S.E.2d at 872. Consequently, defendant's motion to dismiss plaintiffs' petition for writ of certiorari is hereby denied. We now proceed to the merits of this appeal.

## Defendant's Appeal

On appeal, defendant contends the trial court erred in denying its motion for partial summary judgment and granting partial summary judgment for plaintiffs. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2000). The issues raised by defendant are not dependent on further factual development, but are purely legal in nature, and, thus, appropriately resolved at the summary judgment stage.

[1] By its first assignment of error, defendant argues the trial court erred in concluding that the passage of Ordinance No. 2427 was subject to the protest petition provisions of N.C.G.S. §§ 160A-385 and 160A-386. Defendant contends that the protest petition procedure does not apply to amendments to the text of a zoning ordinance, but that it only applies to zoning map amendments. We disagree.

While we realize that the protest petition procedure is generally applied to map amendments rather than text amendments, the language of the statute leads us to conclude that it also applies to text amendments, for it speaks of zoning regulations, restrictions, *and* zone boundaries. *See* David W. Owens, *Legislative Zoning Decisions* (2d ed. 1999). N.C.G.S. § 160A-385 provides, in pertinent part:

> (a) Zoning regulations and restrictions **and** zone boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against **such** change, signed by the owners of twenty percent (20%) or more either of the area of the lots included in a proposed change, or . . . .

N.C. Gen. Stat. § 160A-385(a) (1999) (emphases added). Further, N.C.G.S. § 160A-386, which sets out requirements for valid protest petitions under § 160A-385, reads in *pertinent* part:

> No protest against **any** change in or amendment to a zoning ordinance **or** zoning map shall be valid or effective for the purposes of G.S. 160A-385 unless it be in the form of a written petition actually bearing the signatures of the requisite number of

property owners and stating that the signers do protest the proposed change or amendment . . .

N.C. Gen. Stat. § 160A-386 (1999) (emphases added).

"Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Division of Social Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). "If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Hyler v. GTE Prods. Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993). "[A] statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant." *Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981). "It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage." *Id.*

The clear and unambiguous language of N.C.G.S. § 160A-385(a) states that zoning regulations and restrictions, as well as zone boundaries, are subject to change or amendment from time to time, and that a protest against any such change is subject to the twenty percent (20%) protest petition threshold. The protest language is not limited to changes or amendments to zone boundaries; it applies equally to changes or amendments to zoning regulations and restrictions. In addition, N.C.G.S. § 160A-386 expressly refers to changes in or amendments to zoning ordinances **or** zoning maps.

It is clear from this language that the Legislature intended to make a distinction between amendments to zoning maps and zone boundaries, on the one hand, and other regulations and restrictions found in the text of zoning ordinances, on the other. It is equally clear that the Legislature intended for the protest petition procedure in N.C.G.S. § 160A-385 to apply to both zoning map amendments and amendments to the text of zoning ordinances.

The interpretation sought by defendant would render the inclusion of the terms "zoning regulations and restrictions" in N.C.G.S. § 160A-385(a) and "zoning ordinance" in N.C.G.S. § 160A-386 mere surplusage. This Court cannot assume the Legislature intended for these words to have no effect. Further, we feel that a text amendment which adversely affects the rights of property owners should be treated no differently than a map amendment which has such adverse effect. Therefore, we hold that the protest petition procedure found

in N.C.G.S. §§ 160A-385 and 160A-386 applies to **text** amendments to zoning ordinances in the same manner as it applies to zoning map amendments. Thus, the passage of Ordinance No. 2427 was subject to the protest petition procedure. We affirm the portion of the trial court's order so holding, and overrule defendant's first assignment of error.

**[2]** Defendant next argues the trial court erred in concluding that the class of lots affected by Ordinance No. 2427 are those lots upon which signs affected by the seven-year amortization provisions of Ordinance No. 2427 were located at the time of its passage. We agree with defendant and reverse that portion of the trial court's order.

In relevant part, N.C.G.S. § 160A-385(a) reads:

> In case, however, of a protest against such change, signed by the owners of twenty percent (20%) or more either of the *area of the lots included in a proposed change,* or of those immediately adjacent thereto either in the rear thereof or on either side thereof, extending 100 feet therefrom, or of those directly opposite thereto extending 100 feet from the street frontage of the opposite lots, an amendment shall not become effective except by favorable vote of three-fourths of all the members of the city council.
>
> . . .

N.C. Gen. Stat. § 160A-385(1999) (emphasis added). The question for this Court is what meaning to give to the phrase "area of the lots included in a proposed change" as it relates to Ordinance No. 2427. Defendant contends that the phrase should be interpreted to include the entire zoning jurisdiction of the City, or, at a minimum, all of the zoning districts in the City where "off-premises signs" were permitted at the time Ordinance No. 2427 was passed.

The question of what meaning should be given to the phrase "area of the lots included in a proposed change" as found in N.C.G.S. § 160A-385, in the context of text amendments to zoning ordinances, is one of first impression. However, our Supreme Court has addressed the meaning of the word "lot" as it appears in N.C.G.S. § 160A-385 (formerly N.C.G.S. § 160-176), holding that there is nothing in the statute that indicates the word "lot" should be given any meaning other than its common and ordinary meaning. *Heaton v. City of Charlotte,* 277 N.C. 506, 526-27, 178 S.E.2d 352, 364 (1971).

Therefore, in determining what constitutes the lots included in Ordinance No. 2427, we must give the words of the phrase "area of the lots included in a proposed change" their common and ordinary meaning.

Prior to passage of Ordinance No. 2427, certain "off-premises signs" which did not conform with the 1990 Sign Regulations, but did conform with the original 1977 Sign Regulations, were allowed to escape amortization by being "grand-fathered" under the City's existing zoning regulations. Ordinance No. 2427 removed this protection by mandating that all "off-premises signs," whether "grand-fathered" under earlier regulations or not, which did not conform with Ordinance No. 2426 were required to be amortized by no later than 25 November 2004. It is true that this provision of Ordinance No. 2427 only immediately affects those existing signs that it requires to be amortized within seven years. However, Ordinance No. 2427 expressly encompasses "[a]ll off-premises signs (and their sign structures) which are made nonconforming by a subsequent amendment to this article, or by amendment to the official zoning maps, or by extension of the city's territorial jurisdiction." Asheville City Code § 7-13-8(d)(3). This provision of Ordinance No. 2427 applies to existing signs that conform with Ordinance No. 2426, as well as any conforming signs built in the future, which may be made "non-conforming" by subsequent action. It does not apply to those "nonconforming" signs which are immediately required to be amortized by Ordinance No. 2427. Therefore, it is clear that Ordinance No. 2427 included a larger area than just those lots on which "non-conforming" signs subject to amortization were located at the time of its passage. Accordingly, the trial court's ruling on this issue is reversed.

## Plaintiffs' Cross Appeal

**[3]** Plaintiffs argue the trial court erred in not concluding, as a matter of law, that the City failed to carry out its duties under the protest petition statute as prescribed in *Unruh v. City of Asheville*, 97 N.C. App. 287, 388 S.E.2d 235, *disc. review denied*, 326 N.C. 487, 391 S.E.2d 813 (1990). We disagree.

In *Unruh*, the record showed that the City had not prescribed a form for protest petitions although N.C.G.S. § 160A-386 authorized it to do so. The record also showed that the City had received numerous writings from purported property owners opposing the proposed ordinance, and that the City had made no effort to determine either the accuracy or sufficiency of the protests or the percentage of

rezoned or adjacent land owned by the protestors. These facts led the court to conclude as a matter of law that:

> In undertaking to enact the ordinance over the protests of affected property owners the City had an affirmative duty to determine the sufficiency, timeliness, and percentage of the protests and to call for the vote that the law required; and its failure to determine those essential facts rendered the ordinance invalid on its face, since the 4 to 3 vote was insufficient to overcome a protest by property owners that complied with the provisions of G.S. 160A-385.

*Id.* at 290, 388 S.E.2d at 237.

The facts of the instant case are distinguishable from those in *Unruh.* Here, the City had a prescribed form for protest petitions under N.C.G.S. § 160A-386 which was used by plaintiffs and other protestors in submitting their protests to the proposed ordinances. The City Attorney reviewed the protest petitions and the proposed ordinances, and came to the legal conclusion that the protest petition procedure did not apply to text amendments. However, the City did not stop there. The City then performed calculations to determine whether the twenty percent (20%) threshold under N.C.G.S. § 160A-385 had been met. The City calculated the acreage of its entire zoning jurisdiction, as well as the acreage of the parts of the jurisdiction where "off-premises signs" were permitted at that time. The City also calculated the acreage of the lots on which "off-premises signs" were located, according to its updated 1990 sign survey database. Based on these calculations, the City determined that the twenty percent (20%) threshold of N.C.G.S. § 160A-385 had not been met. In *Unruh,* the City made no effort to determine whether N.C.G.S. § 160-385 required a three-fourths vote for passage of the ordinance in question. In the case *sub judice,* the City took substantial action to determine whether a three-fourths vote of the City Council was required. Therefore, we cannot hold as a matter of law that the City failed to meet its affirmative duties under *Unruh.* Thus, plaintiffs' first assignment of error is overruled.

Plaintiffs also argue the trial court erred in allowing defendant to support its summary judgment motion with affidavits from experts in the field of municipal zoning regulation containing their opinions related to the interpretation and construction of the protest petition statutes. However, we are unable to determine from the record what

consideration, if any, the affidavits were given by the trial court. Thus, we need not address this issue further.

In conclusion, we affirm that portion of the trial court's order concluding that the passage of Ordinance No. 2427 was subject to the protest petition statutes, and we reverse that portion of the trial court's order concluding that the class of lots affected by Ordinance No. 2427 only includes those upon which "off-premises signs" required to be amortized under Ordinance No. 2427 were located at the time of its passage. Further, we hold that the plaintiffs are not entitled to summary judgment under *Unruh*, because defendant has thus far met its affirmative duties under N.C.G.S. §§ 160A-385 and 160A-386. Finally, the case is remanded to determine whether those protest petitions that were filed with the City constitute twenty percent (20%) of the lots included in Ordinance No. 2427. In making this determination, the denominator to be used should be, at a minimum, the area within the City's zoning jurisdiction that was zoned to permit "off-premises signs" at the time Ordinance No. 2427 was passed. It is undisputed from the record that this figure is 4,928 acres. The numerator to be used is the area of the lots actually represented by the protest petitions which were timely filed. Thus, the matter is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judges WALKER and HUNTER concur.