***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and deceased employee, Billy Charles Vogler (hereinafter "decedent,") at all relevant times herein.
3. Plaintiff's average weekly wage was $614.32, yielding a compensation rate of $409.57 per week.
4. Decedent sustained an admittedly compensable injury by accident while in the course and scope of his employment with defendant-employer on March 23, 2000, and said injury by accident caused decedent's death.
5. Decedent was survived by his wife, Mary Nicole Boone Vogler, his daughter, Kristin Dakota Vogler, and stepdaughter, Megan Nicole Boone. Decedent was not survived by any other person who was either wholly or partially dependent upon him at the time of his death.
6. At the Deputy Commissioner's hearing, the parties erroneously stipulated that the Goff Group was the workers' compensation carrier on the risk at all relevant times. After the filing of the first Full Commission Opinion and Award in this matter, defendants filed a Motion to Amend the Stipulation, Record, Opinion and Award and the Caption in All Commission Documents. The carrier on the risk was Reliance Insurance Company (Reliance) with the Goff Group as the third-party administrator. On October 3, 2001, Reliance was declared insolvent in an order of liquidation entered in Pennsylvania. Following the insolvency of Reliance, the North Carolina Insurance Guaranty Association ("NCIGA") assumed its statutory obligations in connection with this claim pursuant to the Insurance Guaranty Association Act ("Guaranty Act"), N.C. Gen. Stat. § 58-48-1, et seq. In its Amended Opinion and Award, the Commission added NCIGA as a party defendant and allowed the law firm of Lewis and Roberts to withdraw as counsel for the Goff Group.
7. The issues to be determined by the Commission are as follows:
(a) Whether decedent's death was caused by the willful failure of defendant-employer to comply with any statutory requirement;
(b) If so, whether additional compensation under N.C. Gen. Stat. § 97-12
can be assessed against NCIGA.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible and convincing evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On March 23, 2000, decedent suffered a compensable injury by accident while in the course and scope of his employment with defendant-employer when a crane broke loose from its platform and fell, striking decedent and causing him to fall 20 feet to the ground. As a direct result of said injury by accident, decedent was killed.
2. At the time of his death, decedent was survived by his wife, Mary Nicole Boone Vogler, to whom he was married on April 3, 1995; his minor daughter, Kristin Dakota Vogler, born March 21, 1996; and his minor stepdaughter, Megan Nicole Boone, born June 1, 1994. Mary Nicole Boone Vogler is the natural mother of Kristin Dakota Vogler and Megan Nicole Boone. Decedent was not survived by any other person that was either wholly or partially dependent upon him for their support.
3. OSHA performed an investigation of decedent's March 23, 2000 death by accident and cited defendant-employer for 20 violations of OSHA regulations, all characterized as "serious." The OSHA investigator was of the opinion and the Commission finds that the violations were the proximate cause of decedent's death.
4. The OSHA report indicated that defendant-employer's records showed a failure to inspect the crane turret bolts for two years prior to this incident, even though OSHA regulations require a daily inspection of the same when in use. Decedent's death was caused by the crane falling on him as he was working on a section of a communications tower erected 18 feet above ground.
5. The OSHA inspector found that the failure to have the crane and other equipment inspected resulted in defendant-employer's failure to discover worn, cracked, and rusty bolts on the turret which caused the crane to fall on decedent. The inspector further stated: "According to the crane operator he heard a snap, then the crane boom started to fall, striking the employee [decedent] on the top leg of the tower section. The SHCO [Safety/Health Compliance Officer] observed that the bolts holding the upper and lower portions of the turret had sheared off. Upon closer examination many bolts showed signs of rust, indicative of cracks. Turret bolts could also be turned by hand, and the SHCO removed twenty two bolts using no tools. Maintenance records for the crane indicated that in the last two years the crane had not been inspected. Crane operators were not trained. Operators did not inspect the crane prior to, and during use. Severity is high due to death from crushing. Probability is also high due to the continuous use of the crane. NOTE: VIOLATION WAS PROXIMATE CAUSE OF ACCIDENT."
6. The inspector also found and the Commission finds as fact that defendant-employer did not prevent its employees from working under a moving crane and provided no training to employees who were exposed to fall hazards while assembling and installing sections of the telecommunications tower. In addition, defendant-employer did not provide a safety net below decedent nor was decedent wearing a safety harness, and these safety violations also contributed to decedent's death.
7. Defendant-employer did not have in place established written safety rules for its employees.
8. The OSHA inspection revealed and the Commission finds that defendant-employer knew or should have been aware of the safety hazards that existed at the job site because the violations were in plain view. Defendant-employer failed to conduct inspections of the crane, rigging equipment, fall protection and general worksite conditions, which resulted in the fatality on March 23, 2000.
9. N.C. Gen. Stat. § 97-12 provides in part that when an employee's death is caused by the willful failure of the employer to comply with any statutory requirement, compensation shall be increased 10%. The injury and death in this case were caused by the willful failure of defendant-employer to comply with N.C. Gen. Stat. § 95-129(2), which requires employers to comply with occupational safety and health standards or regulations promulgated pursuant to the Occupational Safety and Health Act (OSHA) of North Carolina. The State OSHA incorporates the Federal Occupational Safety and Health Act. In this case, defendant-employer was cited for violations of portions of 29 CFR §§ 1926.0251, 1926.0501, 1926.0502, 1926.0503, 1926.0550, and 1926.1051. These cited violations are evidence of defendant-employer's repeated and continuous failure to adequately inspect crane, rigging and derrick machinery and equipment, to adequately train crane operators and those employees exposed to fall hazards, and to supply a protective fall arrest system.
10. Defendant-employer denies any obligation to pay additional compensation pursuant to N.C. Gen. Stat. § 97-12, arguing that the 10% is an increase in compensation and not a fine, penalty, or punitive or exemplary damages as excluded by the Guaranty Act. Defendant-employer also argues that N.C. Gen. Stat. § 97-98 states that the insurer "will promptly pay to the person entitled to same all benefits conferred by this Article, and that the obligation shall not be affected by any default of the insured," and that NCIGA is responsible for payment of any additional compensation.
11. NCIGA denies any obligation to pay additional compensation pursuant to N.C. Gen. Stat. § 97-12, asserting that the additional compensation is not within the coverage of the insurance policy issued by Reliance. The policy specifically requires the employer to be responsible for any payment in excess of the benefits regularly provided by the Workers' Compensation Act, including those imposed due to the employer's failure to comply with a health or safety law or regulation.
12. When an insurer becomes insolvent, the Guaranty Act, N.C. Gen. Stat. § 58-48-1 et. seq, requires that NCIGA:
 (1) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within 30 days after the determination of insolvency, or before the policy expiration date[.] . . . In no event shall the Association be obligated to a policy holder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises. [and]
 (2) Be deemed the insurer to the extent of the Association's obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.
N.C. Gen. Stat. § 58-48-35(a)(1) and (2) (2003).
13. The Guaranty Act defines a "covered claim" as:
 "Covered claim" means an unpaid claim, including one of unearned premiums, which is in excess of fifty dollars ($50.00) and arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy. . . . "Covered claim" shall not include any amount awarded . . . as punitive or exemplary damages[.]
N.C. Gen. Stat. § 58-48-20(4) (2003). Thus, NCIGA is obligated to pay claims only to the extent of a covered claim, which does not include any amount in excess of what the insolvent insurer would be required to pay.
14. The insurance policy between defendant-employer and Reliance provides in Part One, Section F, as follows:
f. Payments You [employer] Must Make
 You [employer] are responsible for any payments in excess of the benefits regularly provided by the workers' compensation law including those required because:
1. of your serious and willful misconduct;
. . . .
 3. you fail to comply with a health or safety law or regulation;. . .
 If we [the carrier] make any payments in excess of the benefits regularly provided by the workers' compensation law on your behalf, you will reimburse us promptly. (italics added)
15. Based upon the clear language of the insurance policy between defendant-employer and Reliance, and therefore NCIGA as the successor to Reliance, the Commission finds that the policy provides for payment by the carrier of any 10% increase in compensation awarded pursuant to N.C. Gen. Stat. § 97-12 and for the carrier to then seek reimbursement by defendant-employer.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon the findings, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Decedent was killed as a result of an injury by accident arising out of and in the course and scope of his employment with defendant-employer on March 23, 2000. N.C. Gen. Stat. § 97-2(6).
2. Plaintiffs are entitled to the payment of the medical expenses incurred for the treatment of decedent's injuries sustained as a result of the injury by accident. N.C. Gen. Stat. § 97-25.
3. Mary Nicole Boone Vogler, Kristen Dakota Vogler and Megan Nicole Boone were wholly dependent upon decedent at the time of his death and are therefore entitled to the death benefits, share and share alike. N.C. Gen. Stat. §§ 97-38, 97-39. Decedent did not leave any other persons who were either wholly or partially dependent upon decedent for support. Therefore, Mary Nicole Boone Vogler, Kristen Dakota Vogler and Megan Nicole Boone are the only persons entitled to take the death benefits in this matter. Mary Nicole Boone Vogler is the mother and natural guardian of the two minor children, Kristen Dakota Vogler and Megan Nicole Boone.
4. Decedent's average weekly wage at the time of the injury by accident was $614.32, yielding a compensation rate of $409.57 per week.
5. Mary Nicole Boone Vogler is entitled to receive one-third of the death benefits at the rate of $136.52 per week for 400 weeks beginning March 24, 2000. The minor children, Kristen Dakota Vogler and Megan Nicole Boone, are each entitled to receive one-third of the death benefits in the amount of $136.52 per week for 400 weeks beginning March 24, 2000 or until each child reaches the age of 18, whichever occurs last. N.C. Gen. Stat. § 97-38. Defendants shall pay said benefits to Mary Nicole Boone Vogler, the mother and natural guardian of the minor children, for the use and maintenance of Kristen Dakota Vogler and Megan Nicole Boone.
6. Defendants shall pay funeral expenses not to exceed $2,000.00 to the appropriate party who provided or previously paid for such services. N.C. Gen. Stat. § 97-40.
7. Defendant-employer knew or should have known of the dangerous conditions created by the numerous OSHA violations because the conditions were so hazardous and the defects in proper maintenance, inspections, and safety equipment were in plain view. The greater weight of the evidence is sufficient to establish that the violations were "willful" within the meaning of N.C. Gen. Stat. § 97-12 in that the numerous cited violations clearly manifest a "deliberate purpose not to discharge" defendant-employer's safety obligations. Beck v.Carolina Power Light Co., 57 N.C. App. 373, 383-84,291 S.E.2d 897, 903(1982), citing Brewer v. Harris,279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971). Therefore, plaintiffs are entitled to a 10% increase in the compensation awarded above due to defendant-employer's willful violations of OSHA safety standards. N.C. Gen. Stat. § 97-12.
8. In effect, the insurance policy provisions regarding reimbursement by defendant-employer render moot NCIGA's argument that the award of additional compensation under N.C. Gen. Stat. § 97-12 constitutes a "penalty" and that the Guaranty Act specifically excludes amounts awarded as punitive or exemplary damages. See, N.C. Gen. Stat. § 58-48-20(4). However, to address this argument, the clear language of N.C. Gen. Stat. § 97-12
provides that "compensation shall be increased ten percent (10%)" (emphasis added). The North Carolina Court of Appeals has stated that "`[I]f the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms.'" Morris Communications Corp. v. City ofAsheville, 145 N.C. App. 597, 605, 551 S.E.2d 508, 514
(2001), citing Hyler v. GTE Prods. Co., 333 N.C. 258, 262,425 S.E.2d 698, 701 (1993). Thus, based upon a clear reading of the statute, the 10% additional compensation awarded pursuant to N.C. Gen. Stat. § 97-12 iscompensation and does not constitute exemplary or punitive damages.
9. Therefore, the additional compensation is part of a covered claim and must be paid by NCIGA, but is subject to reimbursement by defendant-employer, pursuant to the terms of the workers' compensation insurance policy.
 ***********
In accordance with the directives of the North Carolina Court of appeals, and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved below, defendants shall pay to Mary Nicole Boone Vogler death benefits at the rate of $136.52 per week for 400 weeks beginning March 24, 2000. Those amounts which have accrued shall be paid in a lump sum.
2. Subject to attorney's fees approved below, defendants shall pay to Mary Nicole Boone Vogler, the parent and natural guardian of Kristin Dakota Vogler and Megan Nicole Boone, minors, for the use, benefit and maintenance of Kristin Dakota Vogler and Megan Nicole Boone, death benefits at the rate of $136.52 per week for each minor child beginning March 24, 2000 and continuing for 400 weeks or until each child reaches age 18, whichever occurs last. All sums that have accrued shall be paid in one lump sum.
3. Defendants shall pay burial expenses not exceeding $2,000.00 to the person or persons entitled thereto.
4. Defendants shall pay for all medical expenses incurred as a result of the injuries sustained by decedent as a result of said injury by accident.
5. Defendant NCIGA shall pay a 10% increase in the compensation awarded plaintiffs in Award Paragraphs 1 and 2, which shall be paid by increasing by 10% the weekly payments due. This additional 10% amount is subject to reimbursement by defendant-employer, as provided by the insurance policy, and the amount shall be included in the calculation of the attorney's fee approved below. N.C. Gen. Stat. § 97-90.
6. Plaintiffs' attorney requested Commission approval of the attorney's fees set forth in fee agreements with the parties, specifically, 25% of the compensation awarded to Mary Nicole Boone Vogler and 15% of the compensation awarded to each minor child. In death cases, the Commission does not routinely award attorney's fees based upon a percentage of compensation awarded, but rather usually bases the approved fees upon statements of legal services rendered in each particular case. However, under the particular circumstances presented in this case, in that there were questions about which parties were entitled to received death benefits involving the widow's separation from decedent at the time of his death, as well as the stepchild who was never adopted by decedent, the Commission finds and concludes that the fee agreements between plaintiffs' counsel and Ms. Vogler and the guardian ad litem for Megan Nicole Boone are reasonable. Defendants shall pay plaintiffs' counsel 25% of the accrued amount due Ms. Vogler and one-fourth of the ongoing death benefits. Defendants shall also pay plaintiffs' counsel 15% of the accrued amount and 15% of the ongoing death benefits payable to Ms. Vogler as the natural guardian for the minor child Megan Nicole Boone.
7. The minor child Kristin Dakota Vogler is the natural child of decedent and by statute is presumed wholly dependent upon him for support. Therefore, the right of Kristin Dakota Vogler to receive death benefits was established by law and could not be contested. An attorney's fee of 15% of the compensation awarded Kristin Dakota Vogler is not reasonable in light of the minor child's undisputed right to take death benefits under the statute. Therefore, the Commission finds that an attorney's fee of $5,000.00 is reasonable and is thereby approved and awarded to counsel for plaintiffs on behalf of Kristin Dakota Vogler. The attorney's fee shall be deducted from the death benefits payable to Ms. Vogler as the natural guardian for the minor child Kristin Dakota Vogler and paid directly to plaintiffs' attorney.
8. In the event that the portion of this Opinion and Award which awards the 10% increase in compensation is appealed by either party to the North Carolina Court of Appeals, defendant NCIGA is ordered pursuant to N.C. Gen. Stat. § 97-86.1 to comply with all portions of this Opinion and Award, including the 10% increase in compensation. Defendant NCIGA shall be reimbursed by defendant-employer if defendant-employer is ultimately held liable.
9. Defendants shall pay the costs of this action.
This the 11 day of July 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER